JEANINE T. DIXON *v.* UNITED ILLUMINATING COMPANY
(15127)

PETERS, C. J., and BORDEN, NORCOTT, KATZ and PALMER, Js.

---

Argued February 8—decision released May 2, 1995

*William F. Gallagher*, with whom were *Norma Johnson* and, on the brief, *Barbara Cox* and *Donald C. Cousins*, for the appellant (plaintiff).

*John M. Letizia*, with whom, on the brief, was *Edward T. Falsey*, for the appellee (defendant).

*Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, filed a brief for the attorney general as amicus curiae.

BORDEN, J. The issues in this case concern the scope of the authority of the chairman of the workers' com-

pensation commission (chairman) to transfer a pending claim from one workers' compensation district to another pursuant to General Statutes § 31-280,[1] and

[1] General Statutes § 31-280 provides: "CHAIRMAN OF THE WORKERS' COMPENSATION COMMISSION. POWERS AND DUTIES. BUDGET. REPORT OF EXPENSES. (a) There shall continue to be a chairman of the Workers' Compensation Commission selected by the governor as provided in section 31-276. The chairman may not hear any matter arising under this chapter, except appeals brought before the Compensation Review Board and except as provided in subdivision (14) of subsection (b) of this section. The chairman shall prepare the forms used by the commission, shall have custody of the insurance coverage cards, shall prepare and keep a list of self-insurers, shall prepare the annual report to the governor and shall publish, when necessary, bulletins showing the changes in the compensation law, with annotations to the Connecticut cases. The chairman shall be provided with sufficient staff to assist him in the performance of his duties. The chairman may, within available appropriations, appoint acting compensation commissioners on a per diem basis from among former workers' compensation commissioners or qualified members of the bar of this state. Any acting compensation commissioner appointed under this subsection shall be paid on a per diem basis in an amount to be determined by the commissioner of administrative services, subject to the provisions of section 4-40, and shall have all the powers and duties of compensation commissioners. The Workers' Compensation Commission shall not be construed to be a commission or board subject to the provisions of section 4-9a.

"(b) The chairman of the Workers' Compensation Commission shall:

"(1) Establish workers' compensation districts and district offices within the state and assign compensation commissioners to the districts to hear all matters arising under this chapter within the districts;

"(2) Adopt such rules as the chairman, in consultation with the advisory board, deems necessary for the conduct of the internal affairs of the Workers' Compensation Commission;

"(3) Adopt regulations, in consultation with the advisory board and in accordance with the provisions of chapter 54, to carry out his responsibilities under this chapter;

"(4) Prepare and adopt an annual budget and plan of operation in consultation with the advisory board;

"(5) Prepare and submit an annual report to the governor and the general assembly;

"(6) Allocate the resources of the commission to carry out the purposes of this chapter;

"(7) Establish an organizational structure and such divisions for the commission, consistent with this chapter, as the chairman deems necessary for the efficient and prompt operation of the commission;

"(8) Establish policy for all matters over which the commission has juris-

more particularly, subdivisions (6), (14) and (16) of subsection (b) of that statute. The chairman, Jesse M.

diction, including rehabilitation, education, statistical support and administrative appeals;

"(9) Appoint such supplementary advisory panels as the chairman deems necessary and helpful;

"(10) Establish, in consultation with the advisory board, (A) an approved list of practicing physicians, surgeons, podiatrists, optometrists and dentists from which an injured employee shall choose for examination and treatment under the provisions of this chapter, which shall include, but not be limited to, classifications of approved practitioners by specialty, and (B) standards for the approval and removal of physicians, surgeons, podiatrists, optometrists and dentists from the list by the chairman;

"(11) (A) Establish standards in consultation with the advisory board for approving all fees for services rendered under this chapter by attorneys, physicians, surgeons, podiatrists, optometrists, dentists and other persons;

"(B) In consultation with employers, their insurance carriers, union representatives, physicians and third-party reimbursement organizations establish, not later than October 1, 1993, and publish annually thereafter, a fee schedule setting the fees payable by an employer or its insurance carrier for services rendered under this chapter by an approved physician, surgeon, podiatrist, optometrist or dentist, provided the fee schedule shall not apply to services rendered to a claimant who is participating in an employer's managed care plan pursuant to section 31-279. The fee schedule shall limit the annual growth in total medical fees to the annual percentage increase in the consumer price index for all urban workers. Payment of the established fees by the employer or its insurance carrier shall constitute payment in full to the practitioner, and the practitioner may not recover any additional amount from the claimant to whom services have been rendered;

"(C) Issue, not later than October 1, 1993, and publish annually thereafter, guidelines for the maximum fees payable by a claimant for any legal services rendererd by an attorney in connection with the provisions of this chapter, which fees shall be approved in accordance with the standards established by the chairman pursuant to subparagraph (A) of this subdivision;

"(12) Approve applications for employer-sponsored medical care plans, based on standards developed in consultation with a medical advisory panel as provided in section 31-279;

"(13) Establish procedures for the hiring, dismissing or otherwise disciplining and promoting employees of the commission, subject where appropriate to the provisions of chapter 67;

"(14) Control the hearing calendars of the compensation commissioners, and if necessary, preside over informal hearings in regard to compensation under the provisions of this chapter in order to facilitate the timely and efficient processing of cases;

Frankl, purportedly acting pursuant to his administrative powers under those subdivisions, transferred this

"(15) Enter into contracts with consultants and such other persons as necessary for the proper functioning of the commission;

"(16) Direct and supervise all administrative affairs of the commission;

"(17) Keep and maintain a record of all advisory board proceedings;

"(18) Assign and reassign a district manager and other staff to each of the commission's district offices;

"(19) Collect and analyze statistical data concerning the administration of the Workers' Compensation Commission;

"(20) Direct and supervise the implementation of a uniform case filing and processing system in each of the district offices that will include, but not be limited to, the ability to provide data on the number of cases having multiple hearings, the number of postponed hearings and hearing schedules for each district office;

"(21) Establish staff development, training and education programs designed to improve the quality of service provided by the commission, including, but not limited to, a program to train district office staff in the screening of hearing requests;

"(22) Develop standard forms for requesting hearings and standard policies regarding limits on the number of informal hearings that will be allowed under this chapter, and limits on the number of postponements that will be permitted before a formal hearing is held pursuant to section 31-297;

"(23) Develop guidelines for expediting disputed cases;

"(24) Establish an ongoing training program, in consultation with the advisory board, designed to assist the commissioners in the fulfillment of their duties pursuant to the provisions of section 31-278, which program shall include instruction in the following areas; Discovery, evidence, statutory interpretation, medical terminology, legal decision writing and the purpose and procedures of informal and formal hearings;

"(25) Evaluate, in conjunction with the advisory board, the performance of each commissioner biannually and, notwithstanding the provisions of subsection (b) of section 1-19 and chapter 55, make the performance evaluation of any commissioner available only to the governor, the members of the joint standing committee on the judiciary and the respective commissioner prior to any public hearing on the reappointment of any such commissioner. Any information disclosed to such persons shall be used by such persons only for the purpose for which it was given and shall not be disclosed to any other person;

"(26) (A) In consultation with insurers and practitioners, establish not later than October 1, 1993, and publish annually thereafter, practitioner billing guidelines for employers, workers' compensation insurance carriers and practitioners approved by the chairman pursuant to subdivision (10) of this subsection. The guidelines shall include procedures for the resolution of billing disputes and shall prohibit a practitioner from billing or solicit-

case from the fourth to the third workers' compensation district, without prior notice to the parties. The plaintiff, Jeanine T. Dixon, the widow of the claimant

ing payments from a claimant for services rendered to the claimant under the provisions of this chapter (i) during a payment dispute between the practitioner and the employer or its workers' compensation insurance carrier, or (ii) in excess of the maximum fees established pursuant to subparagraph (B) of subdivision (11) of this subsection;

"(B) In consultation with practitioners and insurers, develop not later than July 1, 1994, practice protocols for reasonable and appropriate treatment of a claimant under the provisions of this chapter, based on the diagnosis of injury or illness. The commission shall annually publish the practice protocols for use by approved practitioners, employers, workers' compensation insurance carriers and commissioners in evaluating the necessity and appropriateness of care provided to a claimant under the provisions of this chapter;

"(C) In consultation with practitioners and insurers, develop not later than July 1, 1994, utilization review procedures for reasonable and appropriate treatment of a claimant under the provisions of this chapter. The chairman shall annually publish the procedures for use by approved practitioners, employers, workers' compensation insurance carriers and commissioners in evaluating the necessity and appropriateness of care provided to a claimant under the provisions of this chapter.

"(c) The chairman, as soon as practicable after April first of each year, shall submit to the comptroller an estimated budget of expenditures which shall include all direct and indirect costs incurred by the Workers' Compensation Commission for the succceding fiscal year commencing on July first next. The Workers' Compensation Commission, for the purposes of administration, shall not expend more than the amounts specified in such estimated budget for each item of expenditure except as authorized by the comptroller. The chairman shall include in his annual report to the governor a statement showing the expenses of administering the Workers' Compensation Act for the preceding fiscal year.

"(d) The chairman and the comptroller, as soon as practicable after August first in each year, shall ascertain the total amount of expenses incurred by the commission, including, in addition to the direct cost of personnel services, the cost of maintenance and operation, rentals for space occupied in state leased offices and all other direct and indirect costs, incurred by the commission during the preceding fiscal year in connection with the administration of the Workers' Compensation Act and the total noncontributory payments required to be made to the treasurer towards commissioners' retirement salaries as provided in sections 51-49, 51-50, 51-50a and 51-50b. An itemized statement of the expenses as so ascertained shall be available for public inspection in the office of the chairman of the Workers' Compensation Commission for thirty days after notice to all insurance carriers, and to all employers permitted to pay compensation directly affected thereby.''

Kenneth T. Dixon, moved for a hearing regarding the circumstances of the transfer and for a stay of the transfer pending that hearing. The chairman denied that motion. The plaintiff appealed from the denial of that motion to the compensation review board (board).

The board, acting pursuant to General Statutes § 31-324,[2] reserved the case for the opinion of the Appellate Court on the following questions: 1. (a) Did the chairman of the workers' compensation commission properly deny the claimant's motion for hearing on order of transfer and motion to stay? (b) Was that denial a proper exercise of the chairman's authority pursuant to General Statutes § 31-280, specifically subdivisions (6), (14) and (16) of subsection (b)? 2. Does the compensation review board have jurisdiction over appeals taken from the chairman's exercise of powers conferred to him by General Statutes § 31-280? Or in the alternative: May a party aggrieved by the chairman's ruling on a motion relating to an order of transfer seek review and redress before the compensation review board given the limitations of General Statutes § 31-301 as to the compensation review board's appellate jurisdiction?

---

[2] General Statutes § 31-324 provides: "RESERVATION OF CASES FOR THE APPELLATE COURT. When, in any case arising under the provisions of this chapter, the Compensation Review Board is of the opinion that the decision involves principles of law which are not free from reasonable doubt and which public interest requires shall be determined by the appellate court, in order that a definite rule be established applicable to future cases, said Compensation Review Board may, on its own motion and without any agreement or act of the parties or their counsel, reserve such case for the opinion of the appellate court. Upon a reservation so made, no costs shall be taxed in favor of either party, and no entry fee, record fee, judgment fee or other clerk's fee in either court shall be taxed. Upon the filing of such a reservation, the question shall come before the appellate court as though an appeal had been taken, and said court shall thereupon reserve the case for the opinion of the supreme court in the manner herein indicated; but if, in the opinion of the appellate court, the principles of law involved in the decision are in fact free from reasonable doubt and the public interest does not in fact require that they be determined by the supreme court, the appellate court may, in its discretion, hear and determine the controversy as in other cases."

This case was reserved to this court by the Appellate Court pursuant to General Statutes § 31-324. *Dixon v. United Illuminating Co.*, 36 Conn. App. 150, 153, 649 A.2d 538 (1994); see Practice Book § 4165.5. Under our resolution of the appeal, it is unnecessary to answer questions 1 (a) and (b). We answer question 2, in both of its formulations, in the negative. We also conclude, however, that the chairman's transfer of this case was not a proper exercise of his administrative powers under § 31-280. We therefore vacate the transfer order, and remand the case for further proceedings.

The facts and procedural history are undisputed. The plaintiff's decedent had been an employee of the defendant, the United Illuminating Company. The underlying claim concerned the compensability of the decedent's injury and death, and had been filed in the fourth district, where it had been the subject of several informal conferences before workers' compensation commissioner John A. Arcudi. Further, both the plaintiff and the defendant had noticed depositions of treating physicians, and were in the process of exchanging discovery materials. In addition, the workers' compensation file in this matter discloses the following actions. On February 9, 1994, commissioner Frank J. Verilli issued a notice to the parties for a formal hearing to be held on March 3, 1994. On February 16, 1994, the defendant moved for a continuance of that hearing until after June 2, 1994, claiming that it was premature, that the defendant needed additional time for preparation and discovery, and that there were unresolved discovery disputes outstanding. On February 17, 1994, commissioner Arcudi issued a notice canceling the March 3, 1994 formal hearing and scheduling an emergency informal hearing for February 28, 1994, for the purpose of addressing motions.

By letter dated March 14, 1994, the chairman unilaterally ordered the case transferred from the

fourth district to the third district.[3] The plaintiff then moved, in the fourth district, for a hearing "concerning the circumstances of the letter ordering transfer and that the request for transfer be stayed pending hearing and determination of the same." In her motion, the plaintiff represented that the matter was pending in the fourth district before commissioner Arcudi, who had determined or was in the process of determining certain motions and who had indicated that he would assign the matter for a formal hearing in May, 1994. The plaintiff also represented that depositions had been noticed, and that discovery materials were being exchanged by the parties. Citing General Statutes § 31-278,[4] the plaintiff represented further that she had

---

[3] The letter was directed to the office of the fourth district, with copies to counsel and to the office of the third district. The letter provided as follows: "Please transfer the above-captioned file [Kenneth Dixon vs. United Illuminating] to the New Haven office. If a formal hearing has been scheduled, please cancel same and reschedule another case in its stead."

[4] General Statutes § 31-278 provides: "POWERS AND DUTIES OF COMMISSIONERS. Each commissioner shall, for the purposes of this chapter, have power to summon and examine under oath such witnesses, and may direct the production of, and examine or cause to be produced or examined, such books, records, vouchers, memoranda, documents, letters, contracts or other papers in relation to any matter at issue as he may find proper, and shall have the same powers in reference thereto as are vested in magistrates taking depositions and shall have the power to order depositions pursuant to section 52-148. He shall have power to certify to official acts and shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter. Each commissioner shall hear all claims and questions arising under this chapter in the district to which the commissioner is assigned and all such claims shall be filed in the district in which the claim arises, provided, if it is uncertain in which district a claim arises, or if a claim arises out of several injuries or occupational diseases which occurred in one or more districts, the commissioner to whom the first request for hearing is made shall hear and determine such claim to the same extent as if it arose solely within his own district. If a commissioner is disqualified or temporarily incapacitated from hearing any matter, or if the parties shall so request and the chairman of the Workers' Compensation Commission finds that it will facilitate a speedier disposition of the claim, he shall designate some other commissioner to hear and decide such matter. The superior court, on application of a commissioner or the chairman

not been notified of a request for, and had not consented to, a transfer, and was unaware of any basis for the disqualification or incapacity of commissioner Arcudi.

The motion was referred to the chairman, who issued a written ruling denying the motion. In that ruling, the chairman explained the factual background that gave rise to the transfer as follows: "In the course of my duties as Chairman, I was approached by a representative[5] of the employer who claimed that *the employer was not being treated fairly* by the Fourth District in various workers' compensation cases pending in that district. When asked for specific cases, as opposed to general dissatisfactions, the employer identified this particular case.

"In the course of my duties as Chairman, I am often approached by parties, most often claimants, who are dissatisfied with the manner and/or efficiency with which their cases are being processed. When I am satisfied that this agency is not fulfilling its obligation to efficiently process cases *or where a litigant in a contested case raises a serious claim of lack of fair treatment*, I have in the past ordered that the matter be transferred to another district or that the matter be specially assigned to a commissioner-at-large to handle the disposition of the case. At all times, I have undertaken such transfers and/or special assignment of commissioners pursuant to my administrative powers,

---

or the attorney general, may enforce, by appropriate decree or process, any provision of this chapter or any proper order of a commissioner or the chairman rendered pursuant to any such provision. Any compensation commissioner, after ceasing to hold office as such compensation commissioner, may settle and dispose of all matters relating to appealed cases, including correcting findings and certifying records, as well as any other unfinished matters pertaining to causes theretofore tried by him, to the same extent as if he were still such compensation commissioner."

[5] In a footnote to the ruling the chairman noted: "The representative of the employer was not the attorney representing the respondent-employer."

as set forth in General Statutes § 31-280 (b). . . . I followed this procedure in the present case." (Emphasis added.)

The chairman then reviewed the extensive administrative powers granted to his office by § 31-280 (b), in the light of its legislative history and of the enactment by the legislature of No. 91–339 of the 1991 Public Acts. On the basis of that review, the chairman concluded that "the power to assign commissioners to districts, the power to allocate the resources of the commission to carry out its mission and the power to control the hearing calendars of the compensation commissioners in order to facilitate the timely and efficient processing of cases, all reside in the Chairman. General Statutes § 31-280 (b) (1), (6) and (14). In the end, *which commissioner hears a claim and where a claim is heard is entirely an administrative matter committed to the sound discretion of the Chairman.*" (Emphasis in original.)

With respect to the plaintiff's request for a hearing on the chairman's transfer of the case, the chairman reasoned that "to permit the issue of the administrative transfer of a case to be the subject of a formal hearing before a single commissioner as requested by the claimant (or the subject of an appeal to the compensation review board) would defy the administrative structure created by [No. 91-339 of the 1991 Public Acts]. Through those amendments, the legislature wisely recognized that if the Chairman is to be held accountable for the operation of this statewide agency, it is the Chairman, and not the commissioners acting separately (or together) in review of the Chairman's administrative decision, who shall have the final word on the transfer of cases and their assignment for hearing." Accordingly, the chairman denied the motion. The plaintiff's appeal to the board and this reservation of the case followed.

The plaintiff contends that the transfer order was invalid because: (1) the chairman's refusal to grant her motion for a hearing on his summary transfer of the case denied her due process of law[6]; (2) the specific provisions of § 31-278, rather than the general administrative powers granted to the chairman under § 31-280 (b), govern the transfer of cases from one commissioner to another; and (3) viewing the chairman's order as a ruling on a motion for disqualification of a commissioner for bias, the board has appellate jurisdiction over such a ruling. The defendant claims, to the contrary: (1) that the chairman's denial of the plaintiff's motion for a hearing was a proper exercise of his administrative power under § 31-280 (b) (6), (14) and (16), and did not deny the plaintiff due process; and (2) that the board has no appellate jurisdiction over the chairman's exercise of his administrative powers under § 31-280 (b).

We agree with the defendant that, when the chairman acts pursuant to his administrative power to transfer a case under § 31-280 (b), no hearing is required. We also agree that the board has no appellate jurisdiction over the chairman's exercise of that power. We conclude, however, that in this case, the chairman's transfer was not a valid exercise of his administrative

---

[6] Specifically, the plaintiff argues that due process prohibits an administrative agency, like the chairman, from acting on ex parte communications, even those relating only to procedural matters and, therefore, that she was entitled to a hearing. The defendant contends that no hearing was required because only ex parte communications to the ultimate decision maker on the merits of an administrative controversy are barred by principles of due process, and that the chairman was not such a decision maker in this case.

We need not address these issues, and therefore the first set of reserved questions, because we conclude that, in this case, the chairman's conduct did not fall within his administrative powers under § 31-280 (b). We leave to a case that presents it, therefore, the question of whether, and if so, under what circumstances, the chairman may exercise his administrative powers to transfer a case or cases in response to an ex parte communication.

power under § 31-280 (b); it was, instead, the functional equivalent of the granting of a motion to disqualify commissioner Arcudi for bias. As such, it did not fall within the chairman's administrative authority.

We begin our analysis by noting our basic agreement with the chairman regarding the extensive scope of his administrative authority under § 31-280 (b). Indeed, our discussion that follows regarding the history and legislative genealogy of § 31-280 generally tracks that of the chairman in his written ruling in this case.

Historically, the Workers' Compensation Act (act) lodged in each district commissioner "jurisdiction of all claims and questions arising in such district under" the act. General Statutes (1918 Rev.) § 5357. The geographical boundaries of the districts were legislatively defined to be coextensive with the congressional districts in the state. Thus, each commissioner had jurisdiction over the claims arising out of the injuries that occurred in his district. That "jurisdiction" was construed to be subject matter, as opposed to personal, jurisdiction, which could not be conferred upon a different commissioner by agreement, waiver or conduct of the parties. *Jester* v. *Thompson*, 99 Conn. 236, 238, 121 A. 470 (1923). The only statutory exception to this rule provided that if a commissioner of one district was "disqualified or temporarily incapacitated" from hearing a matter, he was required to designate a different commissioner to hear the matter. Id., 239. As the chairman noted in this case, this resulted in a "system of relatively autonomous commissioners . . . solely responsible for the processing of workers' compensation cases" within their respective geographical districts.

The office of the chairman has evolved over time. In the statutory revision of 1930, there was no reference to a chairman. Instead, § 5243, entitled "To adopt rules

and make report as a board," provided that "[a]cting together, the commissioners shall have power to adopt and change such rules, methods of procedure and forms as they shall deem expedient for the purposes of this chapter," and that they shall submit a biennial report of their doings to the governor. General Statutes (1930 Rev.) § 5243. Between 1930 and 1935 the governor apparently appointed one of the commissioners as the chairman of the board of commissioners, because in the 1935 supplement to the General Statutes, which was the next statutory revision, § 1610c, entitled "Chairman of board," provided that "[t]here shall *continue* to be a chairman of the board of compensation commissioners appointed by the governor." (Emphasis added.) The duties of the chairman, who was one of the commissioners, were to prepare forms, keep the insurance coverage cards and a list of self-insurers, prepare the biennial report to the governor, and publish bulletins of the changes in the compensation law and a digest of compensation decisions.

These administrative duties remained unchanged until 1962, when the chairman was given the added power, when "the proper dispensation of business in any district requires it," to appoint, from among former commissioners or qualified members of the bar, commissioners-at-large to serve on a per diem basis. General Statutes (Rev. to 1962) § 31-280. In 1969, the chairman was given the added responsibility of submitting to the comptroller the annual administrative budget for the workers' compensation commission. Public Acts 1969, No. 696. In 1979, the legislature further amended § 31-280 to provide that the chairman "shall also be chairman of the compensation review division." Public Acts 1979, No. 79–540, § 2.

In 1980, the legislature expanded the role of the chairman by amending § 31-280 to provide that the "duties of the chairman shall be administrative in nature," that

the "chairman may, at his discretion, hear any matter," and that the "chairman shall have control over the hearing calendars of the commissioners whenever, in the discretion of the chairman, an adjustment in the number of hearings within a district would effect a more timely and efficient processing of claims." Public Acts 1980, No. 80-414, § 3. The legislature did not, however, amend § 31-278, which was the statutory progeny of General Statutes (1918 Rev.) § 5357. Thus, the legislature retained the jurisdictional language that had been the basis of our decision in *Jester* v. *Thompson*, supra, 99 Conn. 236. Therefore, although with one hand the legislature gave the chairman the administrative responsibility of "control over the hearing calendars of the commissioners" in order to "effect a more timely and efficient processing of claims," with the other hand it retained the legal basis for the individual commissioners' subject matter jurisdiction—and, therefore, ultimate control—over the claims arising in their respective, legislatively defined districts. The practical effect of this statutory dichotomy was to frustrate what may have been a legislative purpose to create a centralized administrative system.

In 1990, the Legislative Program Review and Investigations Committee undertook a comprehensive study of the workers' compensation system and, in January, 1991, issued its report entitled, "Workers' Compensation in Connecticut" (Report). The committee "found that the system's current administrative structure is not responsive to the concerns of either employers, who pay for benefits, or employees, who receive benefits. Management is weak and accountability is lacking. District offices vary significantly in terms of outcomes and efficiency, and their operating policies and procedures are not uniform. Administrative resources for central and district office operations are inadequate, particu-

larly given the dramatic growth in workload, and back-logs and delays in case processing are widespread."[7] Report, p. i.[8]

In response, the 1991 General Assembly enacted No. 91–339 of the 1991 Public Acts. That act, much of which is now codified at § 31-280, made sweeping changes in the powers of the chairman. First, it eliminated the power of the chairman, first recognized in the 1980 legislation, to "hear any matter," and substituted the provision that the "chairman may not hear any matter arising under this chapter, except appeals brought before the Compensation Review Board and except as provided in subdivision (14) of subsection (b) of this section," which empowers the chairman to "preside over informal hearings in regard to compensation . . . in order to facilitate the timely and efficient processing of cases." General Statutes § 31-280 (a).

Second, the 1991 legislation removed the jurisdictional language from § 31-278 that had been identified as being in tension with the chairman's previous administrative power over the commissioners' hearing calendars. In its place, the legislation provided that "[e]ach

---

[7] The Report also focused on, and made recommendations regarding, "a more equitable benefit structure, and better control over rising benefit costs." Report, p. i. Those concerns, and the subsequent legislative response thereto, are not relevant to the issues in this case.

[8] In his written comment on the Report, then chairman Arcudi articulated one of the difficulties inherent in the statutory scheme that was at the root of the administrative deficiencies: "The basic statute defining the Chairman's role, Sec. 31-280, gives very little real authority over the system. That law states the Chairman's duties shall be administrative in nature, the Chairman shall have control over the hearing calendars of the commissioners and further that the Chairman may hear any matter. However, Sec. 31-278 gives district commissioners jurisdiction of all claims and questions arising in their respective districts. . . . That constitutes a vague and limited definition of authority. Within those limits I have attempted to create the semblance of a centralized system for administration, but what little has been done in that regard has only been through moral suasion rather than through legal authority." Report, p. A-2.

commissioner shall hear all claims and questions arising under this chapter in the district to which the commissioner is assigned." General Statutes § 31-278. Further, the legislation abolished the legislatively established geographical districts, and granted the chairman the authority to establish districts and to assign the commissioners to those districts. General Statutes § 31-280 (b) (1).

Third, that legislation gave the chairman additional, extensive administrative powers and responsibilities, many of which are specified in § 31-280 (b). The three powers of the chairman that are at issue in this case are the powers to: "(6) Allocate the resources of the commission to carry out the purposes of this chapter . . . (14) Control the hearing calendars of the compensation commissioners, and if necessary, preside over informal hearings in regard to compensation under the provisions of this chapter in order to facilitate the timely and efficient processing of cases . . . [and] (16) Direct and supervise all administrative affairs of the commission." General Statutes § 31-280 (b) (6), (14) and (16).

The broad language of these provisions, read against the problematic administrative history of the office of the chairman and read in the context of the other twenty-three administrative powers currently granted to the chairman under § 31-280 (b), indicates clearly the extensive administrative authority granted to the chairman to manage the workers' compensation system so that cases are processed in a timely and efficient manner. There can be no doubt, moreover, that this authority includes the general power to transfer a case or cases from one district to another for that administrative purpose.

Furthermore, the legislative history of the 1991 legislation supports this broad interpretation of the chair-

man's administrative powers and responsibilities. The Report of the Legislative Program Review and Investigations Committee, which led in large part to the 1991 legislation, focused on the need for strong, centralized administrative authority over, and accompanying accountability for, the workers' compensation system. See Report, pp. 68–75. In addition, the hearings held on the proposed legislation before the legislature's Joint Committee on Labor and Public Employees, and the debate on the floors of the House of Representatives and the Senate, indicate the same emphasis on administrative authority and accountability in the office of the chairman. See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 3, 1991 Sess., pp. 891–904, 907–10, 918–26, 931–40, 944–67, 985–93, 1007–1008, 1014–17; 34 H.R. Proc., Pt. 7, 1991 Sess., p. 2791, Pt. 18, pp. 6941–42, and Pt. 24, pp. 9033–84; 34 S. Proc., Pt. 10, 1991 Trailer Sess., pp. 3416–21, 3435–46.

This history also leads us to conclude that, when the chairman transfers a case or cases pursuant to his administrative authority under § 31-280 (b), no hearing is required. The statute does not provide on its face for such a hearing, and applicable due process principles lead us to conclude that a hearing is not constitutionally required. Unless there is "a constitutionally protected interest, the due process analysis ceases because no process is constitutionally due for the deprivation of an interest that is not of constitutional magnitude." *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 322, 627 A.2d 909 (1993). No plaintiff has a constitutionally protected interest in having his or her claim adjudicated in one district or another, or before one commissioner or another.

We also conclude that an administrative transfer of a case or cases by the chairman is not within the appellate jurisdiction of the board. General Statutes

§ 31-301 (a)[9] defines that appellate jurisdiction, and confines it to three types of matters: (1) the "entry of an award by the commissioner"; (2) a "decision of the commissioner upon a motion"; and (3) "an order by the commissioner according to the provisions of section 31-299b."[10] An administrative transfer such as the one at issue in this case does not fall within any of these categories. It would, moreover, undermine the chairman's broad administrative authority and responsibility under § 31-280 (b) to subject his decisions on such discretionary administrative matters to appellate review by the board.

Our conclusion that the chairman has broad administrative authority to transfer a case or cases does not

---

[9] General Statutes § 31-301 provides in relevant part: "APPEALS TO THE COMPENSATION REVIEW BOARD. PAYMENT OF AWARD DURING PENDENCY OF APPEAL. (a) At any time within ten days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. The commissioner within three days thereafter shall mail the petition and three copies thereof to the chief of the Compensation Review Board and a copy thereof to the adverse party or parties. . . ."

[10] General Statutes § 31-299b provides: "INITIAL LIABILITY OF LAST EMPLOYER. REIMBURSEMENT. If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. Reimbursement shall be made within ten days of the commissioner's order with interest, from the date of the initial payment, at twelve per cent per annum. If no appeal from the commissioner's order is taken by any employer or insurer within ten days, the order shall be final and may be enforced in the same manner as a judgment of the superior court."

necessarily lead us to conclude that that authority is unlimited. We conclude that the transfer in this case was not a valid exercise of the chairman's authority.

In this case, the transfer was made in response to a claim that the defendant was "not being treated fairly." We do not read that claim, or the chairman's having acted upon it, as invoking appropriate administrative considerations, such as the timely and efficient processing of claims, or the allocation of resources. Instead, we read that claim, and the chairman's subsequent action transferring the case, as a claim by the defendant and a determination by the chairman that, in some respect, the commissioner considering the matter was biased, or was acting in a biased manner, against the defendant. That is not the type of claim that falls within the chairman's administrative authority to determine. Rather, such a claim is subject to resolution pursuant to § 31-278. See footnote 4.

Pursuant to § 31-278, an aggrieved party may file a motion for the commissioner to disqualify himself or herself. Prior to the 1991 legislation, General Statutes (Rev. to 1991) § 31-278 provided that "[i]f a commissioner is disqualified or temporarily incapacitated from hearing any matter, or if the parties shall so request and the commissioner finds that it will facilitate a speedier disposition of the claim, he shall designate some other commissioner to hear and decide such matter . . . ." Under that provision, a party who claimed that a commissioner was biased could move that the commissioner disqualify himself or herself, and the commissioner's ruling thereon would be subject to appellate review. See *Kirsten* v. *B. F. Goodrich Sponge Products, Inc.*, 178 Conn. 401, 423 A.2d 95 (1979) (appeal to Court of Common Pleas); *Sullivan* v. *Northwind Energy Insulators, Inc.*, 2 Conn. App. 689, 483 A.2d 618 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985) (appeal to compensation review division); *Romeo* v. *H & L*

*Chevrolet, Inc.*, 10 Conn. Workers' Comp. Rev. Op. 72 (1992) (same); *Todd* v. *Jazlowiecki*, 6 Conn. Workers' Comp. Rev. Op. 9 (1988) (same).

Under the 1991 legislation, § 31-278 was amended to provide that "[i]f a commissioner is disqualified or temporarily incapacitated from hearing any matter, or if the parties shall so request and the chairman of the Workers' Compensation Commission finds that it will facilitate a speedier disposition of the claim, he shall designate some other commissioner to hear and decide such matter." Thus, the only difference in the disqualification process created by the 1991 legislation was to lodge in the chairman, rather than the disqualified commissioner, the power to designate the other commissioner to hear and decide the claim. We read this provision to have preserved, however, the procedure under which a party raises the issue of disqualification for bias by first moving that the purportedly biased commissioner disqualify himself. This procedure is consistent with the rules that govern the disqualification of judges. See, e.g., Practice Book §§ 996, 997; *Szypula* v. *Szypula*, 2 Conn. App. 650, 482 A.2d 85 (1984). Similarly, the denial of a motion for a commissioner to disqualify himself or herself for bias is appealable to the board pursuant to § 31-301 (a). Thus, the chairman's transfer order in this case was an impermissible surrogate for a motion by the defendant to disqualify the commissioner, the ruling on which would have been appealable to the board.[11]

---

[11] In this connection, the defendant relies for support of the chairman's ruling in this case on statements made by Senator James H. Maloney at the public hearing on the bill that ultimately became No. 91-339 of the 1991 Public Acts. This reliance is misplaced.

In response to the testimony of a witness who complained about the handling of his individual workers' compensation claim, Senator Maloney stated: "If that were the case under the new bill you would go to the chairman. The chairman would have the power to actually change commissioners, change locations, do what he needs to do . . . ." Conn. Joint Standing

The chairman's authority to administer the workers' compensation system under § 31-280 (b) does not include the authority to adjudicate. In this case, the chairman overstepped his authority by deciding a question, namely, whether a commissioner should be disqualified for bias, for which the normal adjudicative process provides a mechanism for resolution. The chairman had no more administrative authority to transfer this case on the basis of the defendant's claim of bias than if the defendant had claimed that the commissioner had made an erroneous legal ruling. In either situation, the appropriate remedy would have been through the normal adjudicative, rather than the administrative, process.

With respect to the reserved questions: We decline to answer questions 1 (a) and (b). We answer question 2, in both of its formulations, in the negative. The chairman's order of transfer of the case is vacated, and the case is remanded to the board with direction to remand the case to the fourth district for further proceedings according to law.

In this opinion the other justices concurred.

---

Committee Hearings, Labor and Public Employees, Pt. 3, 1991 Sess., p. 953. We do not read this colloquy to support the chairman's ruling in this case for two reasons. First, although it is not absolutely clear, we read the complaint of the witness to have involved the timeliness of the adjudication of his claim, rather than a claim of bias of the individual commissioner. Second, even if it were more clear that he was complaining about such a bias, we would be reluctant to infer, from this brief colloquy at a committee hearing, that the legislature intended the chairman's administrative authority to include what would ordinarily be an adjudicative matter.