MICHAEL CONETTA *v.* CITY OF STAMFORD ET AL.
(SC 15807)

Callahan, Borden, Norcott, Katz and McDonald, Js.

Argued April 24—officially released August 11, 1998

*Booth M. Kelly, Jr.*, for the appellant (named defendant).

*Michael Osborne* and *Kara K. DeRosa*, certified legal interns, with whom were *Carolyn W. Kaas* and *Deborah R. Witkin*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether, at this particular stage of the proceedings, we have jurisdiction to consider the defendant's appeal. We conclude that we do not. Accordingly, we are constrained to dismiss the appeal.

The record discloses the following undisputed facts. The plaintiff, Michael Conetta, became a police officer for the named defendant, the city of Stamford (defendant),[1] on August 10, 1970. On July 7, 1985, the plaintiff failed to report to work due to a psychiatric episode, which he claimed arose out of and in the course of his employment. At the behest of the Stamford police department (department), the plaintiff met with and

---

[1] Rollins Hudig Hall, the other defendant in the case, is not involved in this appeal.

was thereafter treated by Rafique Tai, a psychiatrist, who diagnosed the plaintiff as suffering from severe depression and manifesting major clinical features of agitated and delusional thoughts. When the plaintiff's condition improved, Tai recommended to the department that the plaintiff be allowed to resume his duties as a police officer, but be assigned to indoor or inactive duties, without a gun, under supervision. When the department could not find a position that could accommodate the plaintiff's disability, the defendant, on the basis of the decision of the police pension board (pension board), pursuant to § C7-20-1 of the charter of the city of Stamford (city charter), placed him on disability retirement.

Thereafter, pursuant to General Statutes § 31-308 (a),[2] the plaintiff applied for workers' compensation bene-

[2] General Statutes § 31-308 provides in pertinent part: "Compensation for partial incapacity. (a) If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by the injured employee before his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the Federal Insurance Contributions Act in accordance with section 31-310, and the amount he is able to earn after the injury, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, except that when (1) the physician attending an injured employee certifies that the employee is unable to perform his usual work but is able to perform other work, (2) the employee is ready and willing to perform other work in the same locality and (3) no other work is available, the employee shall be paid his full weekly compensation subject to the provisions of this section. Compensation paid under this subsection shall not be more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, and shall continue during the period of partial incapacity, but no longer than five hundred twenty weeks. If the employer procures employment for an injured employee that is suitable to his capacity, the wages offered in such employment shall be taken as the earning capacity of the injured employee during the period of the employment. . . ."

fits. The defendant challenged the plaintiff's eligibility on the grounds that the plaintiff's alleged psychiatric condition was not work-related, and, even if work-related, it was nevertheless barred because the condition had manifested itself more than three years before the plaintiff had filed his claim for compensation.[3] The plaintiff argued in response that, on the basis of the doctrine of res judicata, the defendant was estopped from denying that his illness was work-related because, by paying him a disability pension pursuant to the city charter, the pension board had necessarily determined that his illness had resulted from his employment.

The hearing, conducted over several days between March, 1990, and June, 1991, was presided over by Commissioner Michael Sherman. After Sherman recused himself, Commissioner Linda Blenner Johnson (commissioner), with the permission of both parties,

[3] General Statutes § 31-294c provides in pertinent part: "Notice of claim for compensation. Notice contesting liability. (a) No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. An employee of the state shall send a copy of the notice to the Commissioner of Administrative Services. As used in this section, 'manifestation of a symptom' means manifestation to an employee claiming compensation, or to some other person standing in such relation to him that the knowledge of the person would be imputed to him, in a manner that is or should be recognized by him as symptomatic of the occupational disease for which compensation is claimed. . . ."

reviewed the transcripts and evidence and issued a "Finding and Dismissal," denying the plaintiff's claim for compensation. Pursuant to General Statutes § 31-301,[4] the plaintiff filed a petition with the workers' compensation review board (review board), claiming that

[1] General Statutes § 31-301 provides: "Appeals to the Compensation Review Board. Payment of award during pendency of appeal. (a) At any time within ten days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. The commissioner within three days thereafter shall mail the petition and three copies thereof to the chief of the Compensation Review Board and a copy thereof to the adverse party or parties.

"(b) The appeal shall be heard by the Compensation Review Board as provided in section 31-280b. The Compensation Review Board shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the Compensation Review Board may hear additional evidence or testimony.

"(c) Upon the final determination of the appeal by the Compensation Review Board, but no later than one year after the date the appeal petition was filed, the Compensation Review Board shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the Compensation Review Board shall include its findings, conclusions of law and award.

"(d) When any appeal is pending, and it appears to the Compensation Review Board that any part of the award appealed from is not affected by the issues raised by the appeal, the Compensation Review Board may, on motion or of its own motion, render a judgment directing compliance with any portion of the award not affected by the appeal; or if the only issue raised by the appeal is the amount of the average weekly wage for the purpose of determining the amount of compensation, as provided in section 31-310, the commissioner shall, on motion of the claimant, direct the payment of the portion of the compensation payable under his award that is not in dispute, if any, pending final adjudication of the disputed portion thereof. In all appeals in which one of the parties is not represented by counsel, and in which the party taking the appeal does not prosecute the case within a reasonable time from the date of appeal, the Compensation Review Board may, of its own motion, affirm, reverse or modify the award.

"(e) When an appeal is taken to the Compensation Review Board, the chief clerk thereof shall notify the commissioner from whose award the

the commissioner's conclusion was legally inconsistent with the subordinate facts and that many of the purported factual findings simply recited the evidence or were mere narrations of the claims of the parties.

The review board agreed that the commissioner merely had recited the evidence and made few factual findings to support her conclusion. Furthermore, the review board noted that, although the record did not reflect that the city charter had been introduced into evidence or that the commissioner had taken administrative notice of it, the commissioner had included in her decision a photostatic copy of § C7-20-1 of the city charter. On the basis of its determination that the commissioner improperly had made a finding based on a

appeal was taken, in writing, of any action of the Compensation Review Board thereon and of the final disposition of the appeal, whether by judgment, withdrawal or otherwise, and shall upon the decision of the appeal, furnish the commissioner with a copy of the decision. Whenever any appeal is pending, if it appears to the Compensation Review Board that justice so requires, the Compensation Review Board shall order a certified copy of the evidence for the use of the employer, the employee or both, and the certified copy shall be made a part of the record on the appeal. The procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. The chairman of the Workers' Compensation Commission shall adopt regulations, in accordance with the provisions of chapter 54, to establish rules, methods of procedure and forms as the chairman deems expedient for the purposes of this chapter.

"(f) During the pendency of any appeal of an award made pursuant to this chapter, the claimant shall receive all compensation and medical treatment payable under the terms of the award to the extent the compensation and medical treatment are not being paid by any health insurer or by any insurer or employer who has been ordered, pursuant to the provisions of subsection (a) of this section, to pay a portion of the award. The compensation and medical treatment shall be paid by the employer or its insurer.

"(g) If the final adjudication results in the denial of compensation to the claimant, and he has previously received compensation on the claim pursuant to subsection (f) and this subsection, the claimant shall reimburse the employer or its insurer for all sums previously expended, plus interest at the rate of ten per cent per annum. Upon any such denial of compensation, the commissioner who originally heard the case or his successor shall conduct a hearing to determine the repayment schedule for the claimant."

document not in evidence, and on the basis of its determination that there was a paucity of factual findings to support the commissioner's dismissal, the review board remanded the matter to the commissioner for further proceedings. As part of the remand, the review board ordered the commissioner to articulate the legal bases of her decision, specifically, to indicate whether she had dismissed the claim because the plaintiff had failed to prove causation or because the claim was time barred by § 31-294c. See footnote 3 of this opinion; see also *Conetta* v. *Stamford*, 13 Conn. Workers' Comp. Rev. Op. 68, 69–70 (1994).

On November 13, 1995, concluding that the review board had precluded her from considering the city charter, the commissioner conducted a limited hearing, allowing only reargument, and on November 30, 1995, she again ruled against the plaintiff. As part of her decision, the commissioner made five findings of fact. She found that: (1) the plaintiff had been hired as a police officer by the defendant on August 1, 1970; (2) the plaintiff alleged that on July 7, 1985, he had experienced the first manifestations of depression arising out of the course of his employment; (3) the defendant contested the claim on the theories that the disorder was not work-related and that, even if work-related, it was time barred; (4) Tai treated the plaintiff for his psychiatric condition; and (5) Tai made certain statements in a September 29, 1986 letter, which the plaintiff had introduced into evidence. The commissioner then recited portions of the letter and concluded that the plaintiff had failed to sustain his burden of proof on the issue of causation. The commissioner made no determination on the issue of whether the claim was time barred.[5]

---

[5] The commissioner made no findings regarding the issue of res judicata, although the dismissal is, at a minimum, an implicit rejection of the plaintiff's claim in this regard.

The plaintiff moved to correct the commissioner's findings, primarily to include the opinion of a prior treating physician pertaining to the work-related nature of delusional thoughts and a psychiatric disorder that the plaintiff suffered in 1985, and to distinguish that illness from past bouts of both work and nonwork-related depression. The commissioner denied the motion to correct.

Thereafter, on appeal, the review board concluded that the commissioner had misunderstood the nature of its previous ruling. The commissioner "was not instructed to omit the city charter from evidence; rather, the panel was saying that that document would first need to be placed in evidence before any findings could flow from it. The [plaintiff] has contended throughout the proceedings that by paying him a disability pension, the [defendant] necessarily has to have acknowledged that his illness was work-related. By not considering the charter, the commissioner omitted the possibility that the [plaintiff] could persuade her that the [defendant] should be estopped from contesting the causal relationship of his depression. She did not make a finding on timely notice, of course; her 1995 decision was based solely on the [plaintiff's] failure to prove causation. The commissioner's mistaken belief that she was precluded from considering the charter (or any other new evidence) may thus have had a determinative effect on this decision."

The review board expressed concern that a third decision by the same commissioner would "appear to be a mere exercise in 'going through the motions' " and that the plaintiff would emerge from the proceedings feeling that he had not "had a meaningful day in court." The review board then concluded that due process required that the matter be reheard de novo by a different commissioner "in order to preserve the vital appear-

ance of impartiality in workers' compensation proceedings." This appeal followed.[6]

On appeal, the defendant claims that the review board: (1) improperly remanded the case because the commissioner had failed to adhere to the board's remand following her first decision; (2) improperly ordered a remand for a trial de novo before a commissioner other than the one who previously had presided over the case based on what the board concluded was an "appearance of partiality"; (3) improperly ordered the commissioner to admit into evidence the city charter when the record had been closed and no motion to admit additional evidence pursuant to § 31-301 (b) had been filed; (4) applied an improper standard of review in deciding that the commissioner's conclusion had resulted from an incorrect application of the law to the subordinate facts; and (5) improperly reversed the decision of the commissioner because, even if the city charter should have been admitted into evidence, the plaintiff had failed to prove that the decision granting him a disability pension had a res judicata effect. Additionally, the parties have briefed the question of whether the appeal from the decision of the review board ordering that the case be remanded for a trial de novo before a different commissioner had been taken from a final judgment. In connection with this last issue, we note that the commissioner who presided over this case resigned her position as a workers' compensation commissioner while this appeal was pending. We conclude that this court does not have jurisdiction over this appeal.

I

We begin with the jurisdictional question of whether this appeal is from a final judgment. "It is axiomatic

[6] The defendant appealed from the decision of the review board to the Appellate Court, and we transferred the appeal to this court pursuant to

that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases; see *Fonfara* v. *Reapportionment Commission*, 222 Conn. 166, 610 A.2d 153 (1992); the subject matter jurisdiction of the Appellate Court and of this court is governed by statute. *Grieco* v. *Zoning Commission*, 226 Conn. 230, 231, 627 A.2d 432 (1993). It is equally axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review; see, e.g., General Statutes § 52-278*l* (prejudgment remedies); General Statutes § 54-63g (petition for review of bail); General Statutes § 51-164x (court closure orders); *State* v. *Ayala*, 222 Conn. 331, 340, 610 A.2d 1162 (1992); appellate jurisdiction is limited to final judgments of the trial court. General Statutes § 52-263 . . . ." (Citation omitted.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 447, 645 A.2d 978 (1994).

Appeals from decisions of the review board are taken pursuant to General Statutes § 31-301b. "[T]he practice and procedure for [workers' compensation] appeals to the appellate court . . . shall conform to the rules of practice governing other appeals." Practice Book § 4165, now Practice Book (1998 Rev.) § 76-1. With regard to such appeals, "references in the rules of appellate procedure to trial court or trial judge shall, where applicable, be deemed to mean the individuals who comprised the board which rendered the decision from which the appeal was taken . . . ." Practice Book § 4165.6, now Practice Book (1998 Rev.) § 76-6.

Therefore, in order for a decision of the review board to be appealable under § 31-301b, it must be a decision that has the same elements of finality as a final judgment rendered by a trial court. See *Hall* v. *Gilbert & Bennett*

---

Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

*Mfg. Co.*, 241 Conn. 282, 294–98, 695 A.2d 1051 (1997); see also *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In workers' compensation cases, "[t]he test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." *Szudora* v. *Fairfield*, 214 Conn. 552, 556, 573 A.2d 1 (1990). This rule is an application of the more general final judgment principle that an otherwise interlocutory order is appealable where (1) it terminates a separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them. *Schick* v. *Windsor Airmotive Division/Barnes Group, Inc.*, 31 Conn. App. 819, 822, 627 A.2d 478 (1993).

It is well settled that orders of remand that entail the hearing of further evidence generally are not appealable final judgments. Id.; *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 185–86, 588 A.2d 194 (1991). Moreover, the parties do not dispute that additional evidence will be taken at the new hearing or that the commissioner's actions will be more than ministerial. Therefore, it is apparent that this appeal is governed by a line of cases in which the proceedings on remand will not be merely ministerial but, rather, will require the commissioner to hear additional evidence and exercise independent judgment and discretion. Accordingly, the question that remains is whether this case falls within an exception to the final judgment rule.

## II

The defendant's first claim on appeal is addressed to whether the review board acted properly when it remanded the case for the second time because the

commissioner had failed to adhere to the review board's remand following her first decision. The resolution of this issue depends on whether the board in 1994, in its first decision, properly remanded the case to the commissioner for a new hearing due, in part, to her failure in the first hearing to mark the city charter as an exhibit or to take judicial notice of it despite the numerous findings she had made based on the document. That decision is controlled by *Szudora* and does not fall within any recognized exception to the final judgment rule. By the very terms of the 1994 decision, the board remanded the case for further proceedings on the plaintiff's claim. Consequently, only when a final decision is rendered, and the issue remains viable, can the defendant avail itself of the appeals process in order to challenge this ruling. *Szudora* v. *Fairfield*, supra, 214 Conn. 556.

Similarly, we do not review the defendant's third, fourth and fifth claims, which we have rephrased for clarity. The defendant argues that the review board's decision to remand the case for a new hearing was improper because (1) the review board applied an improper standard of review to the commissioner's findings, (2) the review board improperly ordered the commissioner to admit into evidence or take judicial notice of the city charter, and (3) even if the city charter should have been admitted into evidence, that document was irrelevant to the plaintiff's claim that the doctrine of res judicata precluded the defendant from contesting that the plaintiff's injury was work-related.

In the first of these claims, the defendant argues that the "commissioner lacks authority prior to making an award to reopen the record to receive additional evidence without a showing of good cause," and that, consequently, by reversing the commissioner's decision due to her refusal to receive additional evidence, the review board deviated from its limited scope of review.

See *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988) ("conclusions drawn . . . from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts"). This claim is similar to the second of these claims, challenging the review board's authority in the first appeal to remand the case for the commissioner to receive additional evidence. That decision, however, did not terminate any separate or distinct proceeding. It simply reversed the ruling of the commissioner regarding issues that took place within the ambit of the proceedings on the plaintiff's claim against the defendants. Nor did the decision so conclude the rights of the parties that further proceedings could not affect them. By the decision's very terms, the review board remanded the case to the commissioner for further proceedings on the plaintiff's claim. Consequently, only when a final decision is rendered, and the issues remain unresolved to its satisfaction, can the defendant avail itself of the appeals process in order to challenge these rulings. *Szudora* v. *Fairfield*, supra, 214 Conn. 556.

A related problem exists in connection with the last of these claims. The plaintiff had claimed before the commissioner that the pension board had already concluded that he must have suffered a work-related injury in order for it to award him a disability pension pursuant to § C7-20-1 of the city charter. On the basis of this earlier determination, the plaintiff argued that the doctrine of res judicata precludes the defendant from denying its liability before the workers' compensation commission. In this last claim, the defendant contends that the city charter is irrelevant and that consequently the review board improperly focused on it. Because the commissioner failed to follow the review board's remand order, however, and the document is not before the court, we are unable to evaluate this claim. Furthermore, to the extent that the defendant is attempting to

resurrect the action taken by the review board in its first decision, the defendant has not cited to any authority to suggest that the claim falls within an exception to the final judgment requirement. See *Schick* v. *Windsor Airmotive Division/Barnes Group, Inc.*, supra, 31 Conn. App. 822.

### III

In its second claim on appeal, the defendant has challenged the review board's authority to order a remand of the case to a new commissioner.[7] The effect of that hearing will be to render the decision previously rendered by Johnson a nullity. At first blush, therefore, the review board's order in this case is comparable to an order of the trial court opening a judgment, which, ordinarily, is not an appealable final judgment because its effect is to eliminate the judgment that was rendered previously. *Connecticut National Bank* v. *Great Neck Development Co.*, 215 Conn. 143, 147, 574 A.2d 1298 (1990). Any review of such an order would generally have to await the judgment that follows the second trial.

We have recognized an exception, however, for those cases in which the appellant makes a colorable challenge to the jurisdiction of the trial court to open the judgment. *Solomon* v. *Keiser*, 212 Conn. 741, 747, 562 A.2d 524 (1989); *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 418, 426 A.2d 1324 (1980). The Appellate Court has held that that exception applies with equal force where there is a challenge to the power of the review board to order a new hearing before a new

---

[7] The issue of which authority, the review board or the chairman of the workers' compensation commission, acted to transfer the case to another commissioner was also implicated in this case. Specifically, defending the decision to remand the case to another commissioner, and, in an attempt to distinguish this case from *Dixon* v. *United Illuminating Co.*, 232 Conn. 758, 775, 657 A.2d 601 (1995), the plaintiff argued that it was the chairman, pursuant to General Statutes § 31-280 (b), who transferred the case for administrative reasons.

commissioner. *Schick* v. *Windsor Airmotive Division/ Barnes Group, Inc.*, supra, 31 Conn. App. 823.

In the present case, the defendant claims that the board improperly remanded the matter to a new commissioner for a trial de novo. The defendant, therefore, challenges the power of the review board to set aside the commissioner's November, 1995 finding and decision, and to transfer the case to a different commissioner. Whether this appeal falls squarely within the exception to the final judgment rule outlined in *Solomon* and *Costle* is an issue, however, that we leave for another day in light of another problem that precludes this court from exercising jurisdiction over the appeal.

"When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." *In re Romance M.*, 229 Conn. 345, 357, 641 A.2d 378 (1994). "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). In the present case, even were we to agree with the defendant that the review board improperly transferred the case to a different commissioner, because the commissioner who heard the case has resigned her position, there is no relief that can be afforded the defendant.

We note that an otherwise moot question may qualify for review under the "capable of repetition, yet evading review" exception. To do so, however, it must meet three requirements. "First, the challenged action, or the effect of the challenged action, by its very nature must

be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." Id., 382–83.

We recognize the importance of the issue of whether the action to transfer the case to a new commissioner was proper. The articulated reason for the transfer was that it was "to preserve the vital appearance of impartiality in workers' compensation proceedings." Whether the decision to transfer was a proper exercise of authority or an abuse of its power is a very important question. Certainly, just as is the case with a trial judge, a commissioner's conduct must be characterized by the absence of any issue of partiality or impropriety; any departure from that standard would cast a shadow on the workers' compensation system. See *Postemski* v. *Landon*, 9 Conn. App. 320, 322, 518 A.2d 674 (1986), citing *Cameron* v. *Cameron*, 187 Conn. 163, 168–69, 444 A.2d 915 (1982).

Although we appreciate the public importance of the issue presented in this case, our ability to review the claim is nevertheless thwarted by the other requirements of the three part test that must also be satisfied. As we have stated, "the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate

litigation can be concluded [and] there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate." *Loisel* v. *Rowe*, supra, 233 Conn. 382. There is nothing before the court to suggest that either of these requirements can be met. The case does not involve functionally insurmountable time constraints; *Goodson* v. *State*, 228 Conn. 106, 115–17, 635 A.2d 285 (1993), on appeal after remand, 232 Conn. 175, 653 A.2d 177 (1995); and it is highly improbable that this plaintiff or his surrogate will again be subject to commissioner reassignment. See *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 574, 499 A.2d 1158 (1985).

The appeal is dismissed.

In this opinion CALLAHAN, C. J., and BORDEN and NORCOTT, Js., concurred.

MCDONALD, J., dissenting. The commissioner found for the city of Stamford on the merits in this workers' compensation case. The workers' compensation review board remanded the matter to a new commissioner for a rehearing de novo on all issues.[1] In so doing, the review board reversed the commissioner's findings, which were in favor of the city.

I do not agree with the majority that this ruling by the review board is not an appealable final judgment. A party may appeal from an order to an administrative agency for a totally new hearing. See *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 410, 521 A.2d 566 (1987); *Watson* v. *Howard*, 138 Conn. 464, 467, 86 A.2d 67 (1952); *Santos* v. *Publix Theatres Corp.*, 108

---

[1] The review board ordered "a trial de novo . . . on *all* issues, including notice, compensability, and the possible *res judicata* effect of the prior decision regarding the claimant's pension." (Emphasis altered.)

Conn. 159, 161–62, 142 A. 745 (1928); see also W. Horton & S. Cormier, Rules of Appellate Procedure (1998 Ed.) § 4000, p. 35. The majority treats the remand as if it were merely ordering further proceedings, applies the final judgment test for interlocutory orders and concludes that the order is not appealable.

I do not read the review board's order as a remand for completion of a hearing, to hear further evidence or for articulation, all of which may not be appealed. See *Matey* v. *Estate of Dember*, 210 Conn. 626, 630–31, 556 A.2d 599 (1989); *Burdick* v. *United States Finishing Co.*, 128 Conn. 284, 285–88, 22 A.2d 629 (1941); see also W. Horton & S. Cormier, supra, § 4000, p. 35. Rather, it was an outright reversal of a finding in favor of the city that put the parties back to square one. The majority's rule would subject any party that is successful on the merits before a commissioner to endless reversals and remands without any judicial review.

Accordingly, I respectfully dissent from the decision of this court dismissing this appeal.