THOMAS F. BARTON *v.* DUCCI ELECTRICAL
CONTRACTORS, INC., ET AL.
(SC 15953)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, McDonald and Peters, Js.

Argued November 3, 1998—officially released May 25, 1999

*Robert F. Carter*, for the appellant (plaintiff).

*Jason M. Dodge*, with whom, on the brief, was *Joseph E. Skelly, Jr.*, for the appellees (defendants).

*Opinion*

NORCOTT, J. The sole issue in this case is whether General Statutes § 31-308 (b), which contains a schedule of compensation for loss or permanent partial disability of enumerated body parts and organs that does not include the skin, violates either the equal protection or due process clauses of the fourteenth amendment to the United States constitution and article first of the Connecticut constitution.

The plaintiff, Thomas F. Barton, brought a claim for workers' compensation benefits as a result of having been burned severely on portions of his face, hands, arms and torso in a propane fire that had occurred while he was employed by the named defendant Ducci Electrical Contractors, Inc.[1] The plaintiff sought compensation pursuant to § 31-308 (b),[2] for, inter alia, per-

[1] The other defendant in this case is the employer's workers' compensation insurer, the Hartford Insurance Group. Hereafter, we refer to Ducci Electrical Contractors, Inc., as the defendant, and to the Hartford Insurance Group as the insurer.

[2] General Statutes § 31-308 (b) provides: "With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be seventy-five per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, or less than fifty dollars weekly. All of the following injuries include the loss of the member or organ and the complete and permanent loss of use of the member or organ referred to:

| MEMBER | INJURY | WEEKS OF COMPENSATION |
|---|---|---|
| Arm | | |
| Master arm | Loss at or above elbow | 208 |
| Other arm | Loss at or above elbow | 194 |
| Hand | | |
| Master hand | Loss at or above wrist | 168 |
| Other hand | Loss at or above wrist | 155 |
| One leg | Loss at or above knee | 155 |
| One foot | Loss at or above ankle | 125 |
| Hearing | | |
| | Both ears | 104 |
| | One ear | 35 |
| One eye | | |
| | Complete and permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision | 157 |

manent partial disability of the skin. The workers'

| | | |
|---|---|---|
| Thumb* | | |
| | On master hand | 63 |
| | On other hand | 54 |
| Fingers** | | |
| | First finger | 36 |
| | Second finger | 29 |
| | Third finger | 21 |
| | Fourth finger | 17 |
| Toes *** | | |
| | Great toe | 28 |
| | Other toes | 9 |
| Back | | Number of weeks which the proportion of inca- pacity represents to a maximum of 374 weeks. |
| Heart | | 520 |
| Brain | | 520 |
| Carotid artery | | 520 |
| Pancreas | | 416 |
| Liver | | 347 |
| Stomach | | 260 |
| Loss of bladder | | 233 |
| Speech | | 163 |
| Lung | | 117 |
| Cervical spine | | 117 |
| Kidney | | 117 |
| Rib cage | Bilateral | 69 |
| Testis | | 35 |
| Mammary | | 35 |
| Nose | Sense and respiratory function | 35 |
| Jaw | Mastication | 35 |
| Penis | | 35–104 |
| Coccyx | Actual removal | 35 |
| Sense of smell | | 17 |
| Sense of taste | | 17 |
| Spleen | In addition to scar | 13 |
| Gall bladder | | 13 |
| Tooth | minimum | 1 |
| Loss of drainage duct of eye (If corrected by prosthesis) | | 17 for each |
| Loss of drainage duct of eye (If uncorrected by prosthesis) | | 33 for each |

compensation commissioner (commissioner) found that the plaintiff had suffered a "20 percent permanent partial impairment of the skin . . . because of the loss of the function of [the plaintiff's] skin in addition to the permanent scars and disfigurement under [§] 31-308 (c)," but did not award compensation for that impairment because the skin was excluded from the § 31-308 (b) schedule of body parts and organs for which permanent partial disability benefits may be awarded. The commissioner denied compensation on the grounds that the workers' compensation commission lacked jurisdiction to award compensation for a body part or member not set forth in § 31-308 (b). The plaintiff appealed that decision to the compensation review board (board).

The board, acting pursuant to General Statutes § 31-324,[3] reserved the following two questions for the opin-

Pelvis ................................................ percentage of back

\*The loss or loss of use of one phalanx of a thumb shall be construed as seventy-five per cent of the loss of the thumb.

\*\*The loss or loss of use of one phalanx of a finger shall be construed as fifty per cent of the loss of the finger. The loss of or loss of use of two phalanges of a finger shall be construed as ninety per cent of the loss of the finger.

\*\*\*The loss or loss of use of one phalanx of a great toe shall be construed as sixty-six and two-thirds per cent of the loss of the great toe. The loss of the greater part of any phalanx shall be construed as the loss of a phalanx and shall be compensated accordingly.

"If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured employee the proportion of the sum provided in this subsection for the total loss of, or the loss of the use of, the member or for incapacity or both that represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion. Notwithstanding the provisions of this subsection, the complete loss or loss of use of an organ which results in the death of an employee shall be compensable pursuant only to section 31-306."

[3] General Statutes § 31-324 provides: "Reservation of cases for the Appellate Court. When, in any case arising under the provisions of this chapter,

ion of the Appellate Court: (1) Does § 31-308 (b) deprive the plaintiff of equal protection or due process of law under the fourteenth amendment to the United States constitution by providing permanent partial disability benefits for damage to certain scheduled organs and body parts, such as the gall bladder, teeth, pancreas and sense of smell, while denying permanent partial disability benefits to claimants who have sustained damage to the skin, as in the present case, or damage to other vital organs, such as the intestines, esophagus, endocrine glands, uterus, abdominal wall, and others? (2) Does § 31-308 (b) deprive the plaintiff of equal protection or due process of law under the provisions of article first of the Connecticut constitution by providing permanent partial disability benefits for damage to certain scheduled organs and body parts, such as the gall bladder, teeth, pancreas and sense of smell, while denying permanent partial disability benefits to claimants who have sustained damage to the skin, as in the present case, or damage to other vital organs, such as the intestines, esophagus, endocrine glands, uterus, abdominal wall, and others? We transferred the reservation from the Appellate Court to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

the Compensation Review Board is of the opinion that the decision involves principles of law which are not free from reasonable doubt and which public interest requires shall be determined by the Appellate Court, in order that a definite rule be established applicable to future cases, said Compensation Review Board may, on its own motion and without any agreement or act of the parties or their counsel, reserve such case for the opinion of the Appellate Court. Upon a reservation so made, no costs shall be taxed in favor of either party, and no entry fee, record fee, judgment fee or other clerk's fee in either court shall be taxed. Upon the filing of such a reservation, the question shall come before the Appellate Court as though an appeal had been taken, and said court shall thereupon reserve the case for the opinion of the Supreme Court in the manner herein indicated; but if, in the opinion of the Appellate Court, the principles of law involved in the decision are in fact free from reasonable doubt and the public interest does not in fact require that they be determined by the Supreme Court, the Appellate Court may, in its discretion, hear and determine the controversy as in other cases."

The relevant facts are undisputed. The plaintiff sought to recover workers' compensation benefits for injuries that he had sustained in a propane fire at his work site while employed by the defendant as an electrician. According to the commissioner's findings, the propane fire damaged the plaintiff's skin such that he suffers from continual lesions, and further, that he must avoid exposure to the sun because of his damaged facial skin. With regard to the plaintiff's physical injuries, the defendant and its insurer provided the plaintiff with the following compensation benefits: medical and surgical treatment and temporary total disability compensation; compromised disfigurement compensation of 150 weeks; and permanent partial disability compensation of 118.53 weeks, based on an accepted 33.1 percent loss of use of the plaintiff's right master hand and 40.6 percent loss of use of his left hand. The plaintiff and the defendant and its insurer also had entered into a stipulation and release of claims for scarring and disfigurement, pursuant to § 31-308 (c),[4] which was approved by the commissioner.

[4] General Statutes § 31-308 (c), formerly subsection (e) of General Statutes (Rev. to 1993) § 31-308, provides in relevant part: "In addition to compensation for total or partial incapacity or for a specific loss of a member or use of the function of a member of the body, the commissioner . . . may award compensation . . . for any permanent significant disfigurement of, or permanent significant scar on, (A) the face, head or neck, or (B) on any other area of the body which handicaps the employee in obtaining or continuing to work. The commissioner may not award compensation under this subsection when the disfigurement was caused solely by the loss of or the loss of use of a member of the body for which compensation is provided under subsection (b) of this section or for any scar resulting from an inguinal hernia operation or any spinal surgery. In making any award under this subsection, the commissioner shall consider (1) the location of the scar or disfigurement, (2) the size of the scar or disfigurement, (3) the visibility of the scar or disfigurement due to hyperpigmentation or depigmentation, whether hypertrophic or keloidal, (4) whether the scar or disfigurement causes a tonal or textural skin change, causes loss of symmetry of the affected area or results in noticeable bumps or depressions in the affected area, and (5) other relevant factors. Notwithstanding the provisions of this subsection, no compensation shall be awarded for any scar or disfigurement which is not

The plaintiff sought compensation for a psychiatric condition, a permanent partial disability from the psychiatric condition, and a permanent partial disability of the skin.[5] The commissioner further found that the plaintiff had suffered a 20 percent permanent partial impairment of his skin because of the loss of skin function, in addition to the permanent scars and disfigurement under § 31-308 (c). The commissioner concluded, however, that he had no jurisdiction to award compensation for such an impairment because the skin was not an organ or body part listed in the schedule of enumerated body parts and organs for which compensation is available under § 31-308 (b). Accordingly, the commissioner dismissed the plaintiff's claim for permanent partial disability based on the injury to his skin.

Before proceeding, we note that the reserved questions are too broad for us to answer as framed. In evaluating the constitutionality of statutes, we are mindful of the principle that "[a] party mounting a constitutional challenge to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven. Whether a case comes to us by way of reservation or after a final judgment, the rule is the same. We do not give advisory opinions, nor do we sit as roving commissions assigned to pass judgment on the validity of legislative enactments. Determination of

located on (A) the face, head or neck, or (B) any other area of the body which handicaps the employee in obtaining or continuing to work. . . ."

[5] The commissioner awarded the plaintiff compensation for the costs of psychiatric treatment associated with the trauma that he had experienced as a result of the propane fire, but found that the plaintiff had failed to prove the existence of a permanent partial impairment or loss of function as a result of his psychiatric condition and, accordingly, the commissioner denied compensation for that claim. Only the claim for permanent partial disability of the skin is relevant to the resolution of the reserved questions.

the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." (Internal quotation marks omitted.) *Moore* v. *Ganim*, 233 Conn. 557, 570, 660 A.2d 742 (1995), quoting *International Longshoremen's & Warehousemen's Union, Local 37* v. *Boyd*, 347 U.S. 222, 224, 74 S. Ct. 447, 98 L. Ed. 650 (1954).

Answering the reserved questions as they are framed would require us to evaluate whether the statute is unconstitutional based on the exclusion of not only the skin as an organ, but also the exclusion of "the intestines, esophagus, endocrine glands, uterus, abdominal wall, and others" from the schedule. The plaintiff, however, seeks compensation for damages exclusively to the skin. For us to address the exclusion of any body part or organ other than the skin from the § 31-308 (b) schedule of compensable organs and body parts would render this an advisory opinion to that extent.

In the past, in order to remedy the overbroad nature of particular reserved questions, we have modified the reserved question. "This court has overlooked a defect in a reservation because of the importance of the issues involved and the fact that the claims of the parties have been fully presented in argument and brief . . . . Where the questions propounded are improperly framed, we have to answer the questions in a manner which will be adequate to guide the trial court in rendering judgment." (Citation omitted; internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 57, 557 A.2d 1249 (1989). Under the circumstances of the present case, therefore, we will entertain the first reserved question reframed as follows: (1) Does § 31-308 (b) deprive the plaintiff of equal protection or due process of law under the fourteenth amendment to the United States constitution by providing permanent

partial disability benefits for damage to certain scheduled organs and body parts, such as the gall bladder, teeth, pancreas and sense of smell, while denying permanent partial disability benefits to claimants who have sustained damage to their skin? We entertain the second reserved question reframed as follows: (2) Does § 31-308 (b) deprive the plaintiff of equal protection or due process of law under the provisions of article first of the Connecticut constitution by providing permanent partial disability benefits for damage to certain scheduled organs and body parts, such as the gall bladder, teeth, pancreas and sense of smell, while denying permanent partial disability benefits to claimants who have sustained damage to their skin?[6]

The plaintiff contends that if § 31-308 (b) is interpreted so as to disallow the commissioner discretion in awarding compensation for loss or permanent partial disability of body parts and organs not contained in the § 31-308 (b) schedule, then the statute violates the equal protection and due process clauses of both the fourteenth amendment to the United States constitution and article first of the Connecticut constitution because there is no rational basis for the legislature to have included certain body parts and organs in the schedule of compensable organs and body parts, and not to include the skin. We disagree with the arguments of the plaintiff, we answer the equal protection portions of both reserved questions in the negative, and we decline to address the due process portions under either the state or federal constitutions.

I

In order to evaluate the constitutional validity of § 31-308 (b), we first must determine its meaning with

[6] We refer in these reserved questions to the compensability of the skin *as an organ* under § 31-308 (b). Scarring or disfigurement of the skin, unlike a separately identifiable loss of function, is still compensable under § 31-

respect to the amendment by No. 93-228 of the 1993 Public Acts (P.A. 93-228), according to the well established principles of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We begin our analysis by examining the plain language of § 31-308 (b). Prior to the 1993 amendment, General Statutes (Rev. to 1993) § 31-308 (b) contained a schedule of body parts and organs, the permanent complete or partial loss or disability[7] of which entitled the injured employee to additional weeks of compensation. Body parts and organs for which compensation was available according to the schedule in General Statutes (Rev. to 1993) § 31-308 (b) were and are termed "scheduled" body parts and organs.[8] Permanent partial disability of body parts and organs not listed in the schedule in General Statutes (Rev. to 1993) § 31-308 (b), that is, the disability of "unscheduled" body parts and organs, was compensable prior to 1993, because

308 (c), formerly subsection (e) of General Statutes (Rev. to 1993) § 31-308. See footnote 4 of this opinion for the text of § 31-308 (c).

[7] Section 31-308 (b) authorizes compensation for both permanent total and permanent partial loss or disability of scheduled body parts and organs, depending on the extent of the permanent injury suffered by the employee. Because in the present case the plaintiff was found to have suffered a 20 percent loss of function of the use of his skin, we only refer to permanent *partial* loss or disability.

[8] See footnote 9 of this opinion for the contents of the schedule in General Statutes (Rev. to 1993) § 31-308 (b) and the changes effected by P.A. 93-228.

the schedule in subsection (b) was supplemented explicitly by subsection (c) of that statute. General Statutes (Rev. to 1993) § 31-308 (c) provided in relevant part that "[i]n addition to compensation for total or partial incapacity, or for a specific loss of a member or loss of use of the function of a member of the body, *the commissioner may award compensation as he deems just for the loss or loss of use of the function of any organ or part of the body not otherwise provided for in this section,* taking into account the age and sex of the claimant, the disabling effect of the loss of or loss of function of the organ involved and the necessity of the organ or complete functioning of the organ with respect to the entire body. . . ." (Emphasis added.) Read together, General Statutes (Rev. to 1993) § 31-308 (b) and (c) provided specific durations of compensation for loss or permanent partial disability of scheduled body parts and organs, and afforded the commissioner discretion in awarding compensation for the loss or permanent partial disability of any unscheduled body parts or organs, as the commissioner deemed just.

With the passage of P.A. 93-228, two important changes occurred that are relevant to this statutory scheme. First, a number of formerly unscheduled body parts and organs were added to the schedule provided in General Statutes (Rev. to 1993) § 31-308 (b);[9] and

---

[9] Section 19 (b) of P.A. 93-228, which amended General Statutes (Rev. to 1993) § 31-308 (b), provides: "With respect to the following injuries, the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be [eighty] SEVENTY-FIVE per cent of the average weekly earnings of the injured employee, calculated pursuant to section 31-310, AS AMENDED BY SECTION 22 OF THIS ACT, after such earnings have been reduced by any deduction for federal OR STATE taxes, OR BOTH, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, but in no case more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309, AS AMENDED BY SECTION 21 OF

THIS ACT, or less than fifty dollars weekly. All of the following injuries include the loss of the member OR ORGAN and the complete and permanent loss of use of the member OR ORGAN referred to:

| MEMBER | INJURY | WEEKS OF COMPENSATION |
|---|---|---|
| Arm | | |
|   Master arm | Loss at or above elbow | [312] *208* |
|   Other arm | Loss at or above elbow | [291] *194* |
| Hand | | |
|   Master hand | Loss at or above wrist | [252] *168* |
|   Other hand | Loss at or above wrist | [232] *155* |
| One Leg | Loss at or above knee | [238] *155* |
| One foot | Loss at or above ankle | [188] *125* |
| Hearing | | |
| | Both ears | [156] *104* |
| | One ear | [52] *35* |
| One eye | | |
| | Complete and permanent loss of sight in, or reduction of sight to one-tenth or less of normal vision | [235] *157* |
| Thumb * | | |
| | On master hand | [95] *63* |
| | On other hand | [81] *54* |
| Fingers ** | | |
| | First finger | [54] *36* |
| | Second finger | [44] *29* |
| | Third finger | [31] *21* |
| | Fourth finger | [26] *17* |
| Toes *** | | |
| | Great toe | [42] *28* |
| | Other toes | [13] *9* |
| Back | | Number of weeks which the proportion of incapacity represents to a maximum of [520] *374* weeks. |
| HEART | | 520 |
| BRAIN | | 520 |
| CAROTID ARTERY | | 520 |
| PANCREAS | | 416 |
| LIVER | | 347 |
| STOMACH | | 260 |
| LOSS OF BLADDER | | 233 |
| SPEECH | | 163 |

| | |
|---|---|
| LUNG | 117 |
| CERVICAL SPINE | 117 |
| KIDNEY | 117 |
| RIB CAGE (BILATERAL) | 69 |
| TESTIS | 35 |
| MAMMARY | 35 |
| NOSE (SENSE AND RESPIRATORY FUNCTION) | 35 |
| JAW (MASTIFICATION) | 35 |
| PENIS | 35–104 |
| COCCYX (ACTUAL REMOVAL) | 35 |
| SENSE OF SMELL | 17 |
| SENSE OF TASTE | 17 |
| SPLEEN (IN ADDITION TO SCAR) | 13 |
| GALL BLADDER | 13 |
| TOOTH (MINIMUM) | 1 |
| LOSS OF DRAINAGE DUCT OF EYE (IF CORRECTED BY PROSTHESIS) | 17 FOR EACH |
| LOSS OF DRAINAGE DUCT OF EYE (IF UNCORRECTED BY PROSTHESIS) | 33 FOR EACH |
| PELVIS | (PERCENTAGE OF BACK) |

*The loss or loss of use of one phalanx of a thumb shall be construed as seventy-five per cent of the loss of the thumb.

**The loss or loss of use of one phalanx of a finger shall be construed as fifty per cent of the loss of the finger. The loss of or loss of use of two phalanges of a finger shall be construed as ninety per cent of the loss of the finger.

***The loss or loss of use of one phalanx of a great toe shall be construed as sixty-six and two-thirds per cent of the loss of the great toe. The loss of the greater part of any phalanx shall be construed as the loss of a phalanx and shall be compensated accordingly.

"If the injury consists of the loss of a substantial part of a member resulting in a permanent partial loss of the use of a member, or if the injury results in a permanent partial loss of function, the commissioner may, in his discretion, in lieu of other compensation, award to the injured employee the proportion of the sum provided in this subsection for the total loss of, or the loss of the use of, the member or for incapacity or both that represents the proportion of total loss or loss of use found to exist, and any voluntary agreement submitted in which the basis of settlement is such proportionate payment may, if otherwise conformable to the provisions of this chapter, be approved by the commissioner in his discretion. NOTWITHSTANDING THE PROVISIONS OF THIS SUBSECTION, THE COMPLETE LOSS OR LOSS OF USE OF AN ORGAN WHICH RESULTS IN THE DEATH OF AN EMPLOYEE SHALL BE COMPENSABLE PURSUANT ONLY TO SECTION 31-306, AS AMENDED BY SECTION 15 OF THIS ACT."

second, subsection (c) of General Statutes (Rev. to 1993) § 31-308, which previously had provided discretion to the commissioner to compensate injured employees for unscheduled injuries, was removed completely from the statute. See P.A. 93-228, § 19.

Although we recognize that "the humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation"; *Herman* v. *Sherwood Industries, Inc.*, 244 Conn. 502, 511, 710 A.2d 1338 (1998); "we are not free to accomplish a result that is contrary to the intent of the legislature as expressed in the act's plain language." *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 137–38 n.16, 717 A.2d 747 (1998). The statute before us has no ambiguity that we could elect to construe either broadly or narrowly. The removal of subsection (c) of General Statutes (Rev. to 1993) § 31-308 in its entirety necessarily means that the legislature elected to remove from the permanent partial disability provision, the discretion that formerly was afforded to the commissioner to award compensation for the disability of an unscheduled body part or organ.

In spite of the clear meaning of § 31-308 on its face, the plaintiff argues on the basis of certain comments in the legislative history of the statute, that we should ignore the removal of subsection (c) of General Statutes (Rev. to 1993) § 31-308, and instead read its discretionary language back into the current statute. As support for his interpretation, the plaintiff relies upon a statement—one of the few in which this portion of P.A. 93-228 was addressed through debate—by Senator Michael P. Meotti, a sponsor of the legislation. Contrary to the plaintiff's argument, however, a review of the relevant exchange in the Senate illustrates that the legislature was cognizant that its passage of P.A. 93-228 would result in the elimination of discretion as it existed under

subsection (c) of General Statutes (Rev. to 1993) § 31-308.

Senator Meotti stated[10] that "for the purposes of explaining my intent and my sense of what should be in the legislative history, the issue has been raised recently in the public debate, not only here, but previous to tonight's debate about using examples of specific types of injuries that do not appear to be mentioned in the schedule, evisceration and you know, intestinal loss or damage or whatever, and I discussed that specific [issue] with representatives of the [National Council of Compensation Insurers] who were the people that I think all parties in this debate have gone to for costing out and other guidance on the issues and I would say that it is their opinion that based on existing practice in Connecticut and throughout the country that this particular example and other attempts to try to find particular injuries like this and say that they are not covered under this language would not in fact be correct, that the commissioners would have the discretion to find injuries of that sort to be subsumed within other descriptions within that schedule such as the stomach. I offer that not to challenge the assertion, but more to make the legislative history, that that is my view of how

---

[10] Senator Meotti made his remarks in response to the following query by Senator James H. Maloney: "[A]nother important issue about going too far, Workers' Compensation is supposed to provide a benefit for an injury. What the bill says though is you have to have the following injuries. You have to have the following injuries. If you have the following injuries, okay, we're going to give you compensation for those injuries. If you don't happen to have those injuries, well, the bill says or the bill doesn't say and there is no direction in the bill as to how to handle that.

"Well, you look through that list and at first you think, boy, that's a pretty comprehensive list, everything must be covered. Well, look a little further. One that was pointed out in the discussions we have is you could be working at a machine and you could be eviscerated by the machine. You could have your guts torn out by the machine. Where is that in the schedule? Nowhere. There is no injury in the schedule that deals with that." 36 S. Proc., Pt. 11, 1993 Sess., p. 3875.

this is written in order to fully protect workers and injuries on the job." 36 S. Proc., Pt. 11, 1993 Sess., pp. 3879–80.

We disagree with the plaintiff's contention that this statement by Senator Meotti constitutes evidence of a legislative intent to have subsection (c) of General Statutes (Rev. to 1993) § 31-308 somehow interpreted back into the current statute. Senator Meotti's statement suggests only that he believed "that the commissioners would have the discretion to find injuries of that sort to be *subsumed within* other descriptions within that schedule . . . ." (Emphasis added.) 36 S. Proc., supra, pp. 3879–80. The statement simply supports the notion that an injured employee could receive compensation for injury to an unscheduled body part or organ under the amended version of § 31-308 (b), to the extent that the injury related to the loss of or loss of use of a *scheduled* body part or member, because such injury always would be compensable as it pertained to a scheduled body part or member. The statement certainly does not contradict the argument that the elimination of subsection (c) of General Statutes (Rev. to 1993) § 31-308 is self-explanatory.

Our reading of § 31-308 (b), with respect to the amendment by P.A. 93-228, is also consistent with the interpretation of the legislative program review and investigations committee (committee), a joint permanent standing committee of the General Assembly created inter alia, to examine state government programs and evaluate whether such programs are "effective, continue to serve their intended purposes, are conducted in an efficient and effective manner, or require modification or elimination . . . ." General Statutes § 2-53d (1). The committee has conducted numerous studies of the workers' compensation system in Connecticut, and we previously have reviewed these studies as part of the relevant legislative history. Cf. *Dixon* v.

*United Illuminating Co.*, 232 Conn. 758, 772–73, 657 A.2d 601 (1995). As in *Dixon*, we again turn to the reports of the committee for evidence of what motivated the legislature to alter the workers' compensation statutes.

In December, 1995, the committee produced a report entitled "Workers' Compensation: Impact of the 1991[11] and 1993 Reforms." In summarizing the impact of those reforms, the committee described the changes that P.A. 93-228 created in the permanent partial disability compensation scheme. Such a summary is evidence of the intent of the legislature, because, although drafted after the legislation already had been enacted, it nevertheless reflects what the legislature believed it was changing in § 31-308 (b) by enacting P.A. 93-228. In this regard, it is significant that the committee is an arm of the legislature, and that in reporting on the prior 1993 legislation it acts as such. It is, as we noted previously, a legislative institution statutorily presumed to know the "intended purposes" of prior legislation. In the report, the permanent partial disability compensation scheme prior to the 1993 reforms was described as follows: "Statutes list the maximum number of weeks of compensation that may be awarded for certain body parts and functions (called scheduled) and gave commissioners discretion to award up to 780 weeks for loss of body parts or functions not specified in the law (unscheduled)." Legislative Program Review and Investigations Committee, Workers' Compensation: Impact of the 1991 and 1993 Reforms (1995) p. 61. In contrast, the report provided that the passage of P.A. 93-228 "*[c]reated a statutory schedule for all unscheduled injuries* and reduced by 1/3 the number of weeks for all scheduled injuries except the back (reduced 28%) and knee (35%)."[12] (Emphasis added.) Id. This reading

---

[11] The 1991 reform referenced here is No. 91-339 of the 1991 Public Acts.

[12] We understand the phrase "all unscheduled injuries" to refer to all those unscheduled injuries that became scheduled as a result of P.A. 93-228, rather

of § 31-308 (b) is consistent with our construction of the statute, by which the legislature removed discretion from the statutory scheme for permanent partial disability compensation, and now authorizes compensation only for scheduled injuries.

In light of the plain language of the statute, as supported by the discussion on the floor of the Senate and the legislative history derived from the committee's 1995 report, we conclude that § 31-308 (b), with respect to the amendments by § 19 of P.A. 93-228, authorizes the commissioner to grant compensation for the loss or permanent partial disability of a scheduled body part or organ. It does not, however, provide the commissioner with discretion to award compensation for the loss or permanent partial disability of an unscheduled body part or organ.

## II

We next address the reserved questions as to whether § 31-308 (b), which contains a schedule of compensation for loss of or injury to enumerated body parts and organs that does not include skin, violates either the equal protection clauses or due process clauses of the fourteenth amendment to the United States constitution and article first of the Connecticut constitution. Specifically, regarding the equal protection claims, the plaintiff contends that the selection of organs and body parts for which compensation is available under the schedule contained in § 31-308 (b) is wholly arbitrary, capricious, and without rational basis. Regarding the due process claims, the plaintiff contends that by denying compensation for injury to the skin, an unscheduled organ, the statute unreasonably bars the common-law cause of action against the defendant that the plaintiff would

---

than to imply that the committee perceives that, following the passage of P.A. 93-228, the § 31-308 (b) schedule contains the universe of possible previously unscheduled body parts and organs.

have had but for its exclusion by the workers' compensation statutes. We answer the equal protection portions of both reserved questions in the negative, and we decline to address the due process portions under either the state or federal constitutions.

A

We turn first to the plaintiff's contention that § 31-308 (b), which does not provide compensation for permanent partial disability of the skin, violates the equal protection clauses of the fourteenth amendment to the United States constitution[13] and article first, § 20, of the Connecticut constitution.[14] The plaintiff maintains that there is no rational basis for denying compensation to an injured employee who suffers from a permanent partial disability of the skin, while granting compensation to injured employees who suffer from the loss or permanent partial disability of a scheduled body part or organ. We reject this claim under both the state and federal constitutions.[15]

---

[13] The fourteenth amendment to the United States constitution provides in part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[14] Article first, § 20, of the Connecticut constitution, as amended by articles five and twenty-one of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[15] In the present case, we first note that the plaintiff did not claim that the state equal protection provision affords any greater rights or protections than the federal equal protection provision, citing *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 577, 512 A.2d 893 (1986), for the proposition that "[t]he equal protection provisions of the federal and state constitutions have the same meaning and limitations." (Internal quotation marks omitted.) The plaintiff's reliance on this proposition is somewhat misplaced, however, and we take this opportunity to clarify the proper reading of our statement in *Daily*.

*Daily* must be understood in the context in which it was decided. The plaintiff in that case did not argue for greater protection under the state equal protection provision than under its federal counterpart and, accordingly, we

"We note at the outset that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger. We have consistently held that every statute is presumed to be constitutional and have required that invalidity be established beyond a reasonable doubt." *Faraci* v. *Connecticut Light & Power Co.*, 211 Conn. 166, 168, 558 A.2d 234 (1989); *Peck* v. *Jacquemin*, 196 Conn. 53, 64, 491 A.2d 1043 (1985).

"In order to analyze the constitutionality of [the challenged statutory scheme], we must first detail the principles applicable to equal protection analysis. When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the

did not address any such issue. Our statement in *Daily* should not be read to suggest that the state equal protection provision can *never* have an independent meaning from the equal protection provision in the federal constitution: the question simply was not before us at that time. We further note that it was not until six years later that we decided *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), and outlined the tools properly to be applied in the course of an independent analysis of state constitutional provisions. In the wake of *Geisler*, the ingredients necessary for an independent state constitutional analysis are clear, as is the fact that " 'in some instances . . . the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution . . . .' " Id., 684; see, e.g., *State* v. *Morales*, 232 Conn. 707, 717, 657 A.2d 585 (1995) (due process). If a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart, however, we will not of our own initiative address that question. With regard to the reserved questions before us, the plaintiff made no argument supporting an independent meaning under the state constitution. Accordingly, the federal equal protection standard is considered prevailing for the purposes of our review of both the state and federal equal protection claims in this case.

achievement of a compelling state interest. . . . If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 143, quoting *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 314, 673 A.2d 474 (1996).

Because neither a fundamental right nor a suspect class is at issue in the present case, the rational basis test is the appropriate standard for determining the constitutionality of the classification, which grants compensation for the loss or permanent partial disability of scheduled body parts and organs, but denies compensation for a permanent partial disability of the skin. The court's function under the rational basis test "is to decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal." *Zapata* v. *Burns*, 207 Conn. 496, 507, 542 A.2d 700 (1988); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 577, 512 A.2d 893 (1986). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368 (1980), reh. denied, 450 U.S. 960, 101 S. Ct. 1421, 67 L. Ed. 2d 385 (1981)], the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659, reh. denied, 450 U.S. 1027, 101 S. Ct. 1735, 68 L. Ed. 2d 222 (1981)], and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see

*Cleburne* v. *Cleburne Living Center, Inc.*, [473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)]. *Nordlinger* v. *Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992). . . . *Florestal* v. *Government Employees Ins. Co.*, supra, 236 Conn. 314–15." (Internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 144.

We begin our analysis by reviewing the legislative history relevant to the passage of P.A. 93-228 to determine whether the legislative decision to include certain body parts and organs in the schedule, while barring compensation for permanent partial disability of the skin, was rational. Our first step is to determine what goals the legislature sought to achieve. Central to the reforms enacted pursuant to P.A. 93-228 was an intent to reduce the rising costs of the workers' compensation system. This intent is evident in the debate on the floors of both the House of Representatives and the Senate; see, e.g., 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6145, 6188, 6213–14; 36 S. Proc., supra, pp. 3846, 3851–52, 3878; as well as in a 1991 report by the committee, which preceded both the 1991 and 1993 reforms. The committee concluded that "benefit costs [were] rapidly escalating, with little response from the system to contain them." Legislative Program Review and Investigations Committee, Workers' Compensation in Connecticut (1991) p. i. The committee also concluded that "[t]he largest portion [of claims filed, other than medical only], slightly over 50 percent, [go] to workers who suffer a permanent partial loss of a body part or function." Id., p. 88.

In the realm of permanent partial disability compensation, the means of achieving the intended cost reduction was twofold. The committee's 1995 report on the impact of the 1991 and 1993 reforms, referred to in part I of this opinion, explained that "[a]lthough the goal of the indemnity changes in both the 1991 and 1993 public acts was the same—to cut costs—the focus was slightly

different. Public Act 91-339 sought to cut costs primarily by reducing a claimant's weekly compensation rate . . . . The second component, duration, was the focus of the cost cutting strategy employed under Public Act 93-228. It should be noted that the indemnity provisions in P.A. 91-339 and 93-228 were not limited exclusively to changes in the rate or duration components of the formulas. The two acts also included changes in what was covered or considered a compensable claim under the state workers' compensation law." Legislative Program Review and Investigations Committee, Workers' Compensation: Impact of the 1991 and 1993 Reforms (1995) p. 59. It is the second area of change, altering what constitutes a compensable claim, that is the focus of the constitutional question in the present case.

The plaintiff argues that the process by which previously unscheduled body parts and organs became scheduled was arbitrary. As evidence of the arbitrary nature of the process, he claims that the present schedule was derived by adding to the already existing schedule one commissioner's personal copy of a list of durational terms for certain unscheduled body parts and organs. According to the plaintiff, when the commissioners formerly had discretion to compensate for unscheduled injuries, each commissioner had a copy of a standard list of durational norms for common unscheduled body parts and organs, and some commissioners added additional norms to their own copies according to what arose in the course of their cases. The lack of rationality, the plaintiff contends, stems from the fact that another commissioner's copy of the list might have included some different body parts and organs that, by virtue of this selection process, were not included in the schedule. We find nothing in the legislative history to confirm the plaintiff's description of how the additions to the schedule were selected.[16]

---

[16] What does exist to shed light on the legitimacy of the selection process is found in appendix C to the committee's 1991 report. Appendix C contains

Nevertheless, even if we were to assume, arguendo, that the plaintiff is correct about the derivation of the present schedule, such a scenario would not result in a determination that § 31-308 (b) is unconstitutionally arbitrary. Like the United States Supreme Court, "we have consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits." (Internal quotation marks omitted.) *Faraci* v. *Connecticut Light & Power Co.*, supra, 211 Conn. 169, quoting *Idaho Dept. of Employment* v. *Smith*, 434 U.S. 100, 101, 98 S. Ct. 327, 54 L. Ed. 2d 324 (1977). We have observed that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. *D.A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 879, 670 A.2d 1278 (1996), quoting *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)." (Internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 144. "The test . . . is whether this court can *conceive* of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis." (Emphasis

the schedule in General Statutes (Rev. to 1993) § 31-308 (b), and a "Revised List of Recommended Norms for Non-Scheduled Losses." The body parts and organs contained in this revised list uniformly were incorporated into the schedule as it was revised by P.A. 93-228. Whether the selection process was initiated by adopting the durational norms used by any one commissioner, the presence of the revised list in the 1991 report suggests that, at the very least, members of the committee had a substantial opportunity to review the selections in preparing the 1991 report, which was published well in advance of the passage of P.A. 93-228.

in original.) *Faraci* v. *Connecticut Light & Power Co.,* supra, 169 n.2; see also *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 642, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980). Further, "the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger* v. *Hahn,* supra, 505 U.S. 15.

We have no difficulty in ascertaining a rational justification for constructing a statute such that the loss or permanent partial disability of many organs and body parts is compensable, but the permanent partial disability of the skin is not. First, the legislature has a legitimate interest in reducing the costs of the workers' compensation system. To further this interest, the legislature reasonably could decide to restructure the permanent partial disability portion of its workers' compensation scheme so that it carries a share of the burden of that cost reduction, by reducing the compensation paid out for permanent partial disability. At the same time, the legislature need not choose between compensating either for the loss or permanent partial disability of every body part and organ, or none at all, in order for § 31-308 (b) to remain constitutionally sound. "As the United States Supreme Court has reminded us, a state, consistent with the equal protection clause, may take one step at a time, addressing itself to. the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . . Particularly with respect to social welfare programs, so long. as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. [T]he Equal Protection Clause does not require that a State must choose between attacking every

aspect of a problem or not attacking the problem at all." (Internal quotation marks omitted.) *Faraci* v. *Connecticut Light & Power Co.*, supra, 211 Conn. 172–73, quoting *Geduldig* v. *Aiello*, 417 U.S. 484, 495, 94 S. Ct. 2485, 41 L. Ed. 2d 256 (1974).

Accordingly, it is rational that the legislature would seek to ensure that, with the elimination of subsection (c) of General Statutes (Rev. to 1993) § 31-308, certain formerly unscheduled body parts and organs nevertheless remain compensable, a goal that would make additions to the schedule a necessity. To determine which unscheduled body parts and organs commonly were compensated under subsection (c), the legislature legitimately could have looked for guidance to an experienced commissioner's list of durational norms for unscheduled losses.

Moreover, the current subsection (c) of § 31-308 already provides a system of compensation for certain types of injury to the skin, specifically scarring and disfigurement on the face, head or neck.[17] In determining which unscheduled losses should become scheduled, it would be rational, therefore, for the legislature to have excluded skin generically in light of the existing coverage for scarring and disfigurement. That there may be other legitimate or more comprehensive means of crafting a revised compensation schedule is irrelevant to this analysis. Neither the state nor the federal constitution requires more.

We conclude, therefore, that § 31-308 (b), with respect to the amendment by P.A. 93-228, does not violate the equal protection clauses of either the fourteenth amendment to the United States constitution or article first, § 20, of the Connecticut constitution.

---

[17] We also note that, in the present case, where the plaintiff suffered injury to his skin and did receive compensation based on the permanent partial loss of use of both his right master hand and his left hand, we assume that a portion of the injury to his skin is necessarily reflected in that award.

## B

We turn briefly to the question of whether § 31-308 (b) violates the due process clauses of the fourteenth amendment to the United States constitution[18] and article first, § 8, of the Connecticut constitution.[19] The plaintiff contends that "since he can receive no permanent partial disability benefits for the loss of use of his skin, he was unreasonably deprived of his common-law remedy against his employer for compensation for the permanent damage to his skin, in violation of the due process provisions of the state." We decline to reach the constitutionality of § 31-308 (b) on either state or federal due process grounds, however, because the plaintiff has not provided sufficient argument in support of such claims.

"We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the [plaintiff] has provided an independent analysis under the particular provisions of the state constitution at issue." *State* v. *Robinson*, 227 Conn. 711, 721, 631 A.2d 288 (1993); see also *Luce* v. *United Technologies Corp.*, supra, 247 Conn. 142 n.22; *State* v. *Crespo*, 246 Conn. 665, 685 n.15, 718 A.2d 925 (1998), and cases cited therein. Further, where the plaintiff asserts a constitutional violation on both federal and state due process grounds "without developing his argument either in his brief or at oral argument, we deem his due process claims to be abandoned. *Hayes* v. *Smith*, 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984); *Rodriguez* v. *Mallory Battery Co.*, 188 Conn. 145, 149, 448 A.2d 829 (1982)." *Ganim* v. *Roberts*, 204 Conn. 760, 765 n.5, 529 A.2d 194 (1987).

---

[18] See footnote 13 of this opinion for the relevant text of the fourteenth amendment to the United States constitution.

[19] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

In the present case, the plaintiff refers generally to "the due process provisions" of the state constitution, but fails to provide any analysis at all of due process protection under the state constitution. Similarly, although the reserved questions specifically reference the constitutionality of § 31-308 (b) under the due process clause of the fourteenth amendment to the United States constitution, the plaintiff does not provide an analysis of this federal constitutional claim. We deem the plaintiff, therefore, to have abandoned the claims that § 31-308 (b) is violative of the due process provisions of either the federal or the state constitutions.

The reserved questions are answered "no" to the extent that they address whether § 31-308 (b) deprives the plaintiff of equal protection under either the state or the federal constitution; the reserved questions are not answered to the extent that they address whether § 31-308 (b) deprives the plaintiff of due process of law under either the state or the federal constitution; and the case is remanded to the board with direction to affirm the decision of the commissioner.

No costs will be taxed to either party.

In this opinion CALLAHAN, C. J., and BORDEN, KATZ, MCDONALD and PETERS, Js., concurred.

BERDON, J., concurring in part and dissenting in part. I join the majority's essential holding that a worker who has suffered a permanent and grievous injury to his skin is entitled to compensation for this injury pursuant to General Statutes (Rev. to 1993) § 31-308, as amended by No. 93-228, § 19, of the 1993 Public Acts (P.A. 93-228).[1] I write separately for three reasons: (1) to set forth my understanding of why the plaintiff's injury is compensable; (2) to explain my view that the

---

[1] See footnote 9 of the majority opinion for the text of P.A. 93-228, § 19 (b), now codified at General Statutes § 31-308 (b).

contrary result would violate the equal protection clause of our state constitution; and (3) to express my disagreement with the remand that the majority has ordered.

I shall begin by briefly summarizing the pertinent facts. The plaintiff, Thomas F. Barton, was severely burned on his face, hands, arms and torso in a propane fire that erupted while he was working at the bottom of a manhole. The workers' compensation commissioner (commissioner) found that, as a result of these burns, the plaintiff will suffer for the rest of his life from "continual lesions on his skin, particularly his face and his hands, in the form of pustules, eruptions and black-heads, requiring the daily application of creams and emollients, and [he] must avoid any exposure to sun because of the damaged nature of his facial skin; he must wear sunblock when he is required to be out of doors even minimally." In short, the injury to the plaintiff's skin—an essential bodily organ—has left him seriously and permanently disabled.

Notwithstanding his express finding that the plaintiff sustained serious and permanent injuries to his skin, the commissioner nevertheless declined to compensate the plaintiff for these injuries. Citing the fact that skin qua skin is not specifically enumerated in the statutory schedule of compensable injuries set forth in § 31-308, the commissioner inferred that he did not have subject matter jurisdiction to compensate the plaintiff for his skin injuries. The plaintiff appealed from this ruling to the workers' compensation board (board), which, pursuant to General Statutes § 31-324, reserved two questions for the opinion of the Appellate Court: (1) whether § 31-308 violates the equal protection clause of our state constitution;[2] and (2) whether § 31-308 violates

---

[2] See footnote 10 of this concurring and dissenting opinion.

the equal protection clause of the federal constitution.[3] We transferred the reservation from the Appellate Court to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). The majority of this court holds today that the plaintiff's skin injuries are compensable, and that the commissioner therefore had subject matter jurisdiction. I join this holding. Inexplicably, the majority nevertheless affirms the commissioner's jurisdictional ruling. It is this aspect of the majority opinion from which I dissent.

I

The questions reserved by the board assume that the plaintiff's skin injuries are not compensable under § 31-308 (b).[4] Every member of this panel rejects this assumption, and for good reason: the legislature could not possibly have intended to provide nine weeks of compensation for the loss of a pinky toe, but no compensation whatsoever for the grievous disability with which the plaintiff is afflicted. As the majority succinctly puts it, "an injured employee [may] receive compensation for injury to an unscheduled body part or organ . . . to the extent that the injury relate[s] to the loss of or loss of use of a scheduled body part or member, because such injury always [is] compensable as it pertain[s] to a scheduled body part or member."

Accordingly, I agree with my colleagues in the majority that the commissioner should have subsumed the plaintiff's serious injury to his skin—which does not appear in the statutory schedule—into the framework provided by the list of anatomical regions that are explicitly scheduled. So, for example, the commissioner should have subsumed the plaintiff's injury to the skin covering his hands into the schedule for "hand."[5] The

---

[3] See footnote 11 of this concurring and dissenting opinion.

[4] See footnotes 10 and 11 of this concurring and dissenting opinion.

[5] Likewise, the commissioner should have subsumed the plaintiff's injury to the skin covering his arms into the schedule for "arm," and so forth.

legislative history supplies ironclad support for this conclusion.

The defendants observe that, by adopting P.A. 93-228, the legislature deleted former § 31-308 (c), which specifically authorized the commissioner to award compensation for injuries that were not listed in the statutory schedule.[6] In addition, the defendants correctly point out that skin qua skin is absent from the statutory schedule. If this deletion and this absence were the only evidence in the record before us, then there might be some merit to the defendants' argument that the legislature intended to eliminate the commissioner's authority to compensate claimants for unscheduled injuries.

These items are not, however, the only evidence of legislative intent. In fact, affirmative statements contained in the legislative history provide conclusive support for our view that the commissioner had the power to award compensation for the plaintiff's skin injuries. Senator Michael P. Meotti made the following remarks: "I want to rise briefly on two specific points that I think are important to clarify in this debate. First, for purposes of explaining my intent and my sense of *what should be in the legislative history*, the issue has been raised . . . of specific types of injuries that do not appear to be mentioned in the schedule, evisceration and you know, intestinal loss or damage or whatever, and I discussed that specific [issue] with representatives of the [National Council of Compensation Insurers] who were the people that I think all parties in this debate have gone to for . . . guidance on the issues and I would say that it is their opinion that based on existing practice in Connecticut and throughout the

---

[6] General Statutes (Rev. to 1993) § 31-308 (c) provided in pertinent part: "[T]he commissioner may award compensation as he deems just for the loss or loss of use of the function of any organ or part of the body not otherwise provided for in this section . . . ."

country that this particular example and other attempts to try to find particular injuries like this and say that they are not covered under this language *would not in fact be correct, that the commissioners would have the discretion to find injuries of that sort to be subsumed within other descriptions within that schedule* such as stomach. I offer that . . . *to make the legislative history,* that that is my view of how this is written *in order to fully protect workers and injuries on the job.*" (Emphasis added.) 36 S. Proc., Pt. 11, 1993 Sess., pp. 3879–80.

We accord substantial weight to the words of Senator Meotti, for two reasons: (1) he was the principal sponsor of P.A. 93-228, the act that revised the statutory scheme relevant to this appeal; and (2) he intended his comments "to make the legislative history" upon which courts would subsequently rely. Id., p. 3880. His statements make it crystal clear that the legislature did not intend to deny compensation for injuries to the skin, such as those that the plaintiff has suffered. Instead, as Senator Meotti explained, the legislature intended for the commissioner to "subsume" such unscheduled injuries into the statutory schedule.[7] Id. The defendants' interpretation of the statute eviscerates this intention. Furthermore, as I discuss in part II of this concurring and dissenting opinion, the defendants' interpretation of § 31-308 would render the statutory scheme for workers' compensation unconstitutional under our state constitution.[8]

## II

I agree with the majority that the plaintiff failed to argue that our state equal protection clause provides

---

[7] If any members of the legislature had wished to refute the plain meaning of Senator Meotti's representation of "what should be in the legislative history," they knew very well how to do so.

[8] I do not advance my constitutional discussion as an exhaustive analysis. See, e.g., *State* v. *Geisler,* 222 Conn. 672, 681–90, 610 A.2d 1225 (1992).

more protection than its federal counterpart. I do not, however, agree with the majority's statement that "we [should] not of our own initiative address that question." The board reserved the questions before us pursuant to § 31-324.[9] This means that the board was "of the opinion that the [issue] involves principles of law which are not free from reasonable doubt and which [the] public interest requires shall be determined by [an appellate court], in order that a definite rule be established applicable to future cases . . . ." General Statutes § 31-324. Accordingly, it is not necessary to address the question of our own initiative; the initiative was taken by the board. Moreover, the board framed two separate questions, one limited exclusively to the state constitution,[10] the other limited exclusively to the federal constitution.[11] In short, the majority decides not

Instead, my intention is simply to demonstrate the constitutional implications of the defendants' narrow reading of § 31-308.

[9] General Statutes § 31-324 provides in relevant part: "When, in any case arising under the provisions of this chapter, the [board] is of the opinion that the decision involves principles of law which are not free from reasonable doubt and which public interest requires shall be determined by the Appellate Court, in order that a definite rule be established applicable to future cases, said [board] may, on its own motion and without any agreement or act of the parties or their counsel, reserve such case for the opinion of the Appellate Court. . . ."

[10] Pursuant to § 31-324, the board reserved the following question for review under our state constitution: "Does § 31-308 (b) . . . deprive the claimant of equal protection . . . under the provisions of Article First of the Connecticut Constitution by providing permanent partial disability benefits for damage to certain scheduled organs and body parts . . . while denying permanent partial disability benefits to claimants who have sustained damage to the skin . . . ?"

[11] Pursuant to § 31-324, the board reserved the following question for review under the federal constitution: "Does § 31-308 (b) . . . deprive the claimant of equal protection or due process of law under the Fourteenth Amendment to the United States Constitution, by providing permanent partial disability benefits for damage to certain scheduled organs and body parts, such as the gall bladder, teeth, pancreas and sense of smell, while denying permanent partial disability benefits to claimants who have sustained damage to the skin (as in the instant case), or damage to other vital organs, such as the intestines, esophagus, endocrine glands, uterus, abdominal wall, and others."

to consider the contours of our state equal protection clause, notwithstanding the fact that the board has (1) determined that the public interest requires us to reach the issue and (2) scrupulously reserved the question for our judgment. I disagree with this decision. Furthermore, for the reasons discussed below, I believe that we cannot construe § 31-308 in a comprehensive and principled manner unless we consider the constitutional implications of the defendants' interpretation of the statute.

Turning to the merits of the issue that the majority fails to consider, it is fundamental that "[f]ederal law, whether based upon statute or constitution, establishes a minimum national standard for the exercise of . . . rights and does not inhibit state governments from affording higher levels of protection for such rights." *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 57, 469 A.2d 1201 (1984). Our state equal protection clause is much more expansive than its federal counterpart. See, e.g., E. Peters, "Capacity and Respect: A Perspective on the Historic Role of the State Courts in the Federal System," 73 N.Y.U. L. Rev. 1065, 1067–68 (1998) ("[I]t should be old news that state constitutions contain some provisions for which there are no federal counterparts. . . . Over the years, our state constitution has been amended to include an equal protection clause that is especially capacious. . . . [T]hese *distinctive state constitutional rights* furnished the underpinnings for our recent school desegregation case, *Sheff* v. *O'Neill* [238 Conn. 1, 678 A.2d 1267 (1996)]." [Emphasis added.]). The state equal protection clause provides in pertinent part that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination . . . because of . . . physical . . . disability."[12] Conn. Const., amend. XXI. This specific

---

[12] Article first, § 20, of the constitution of Connecticut, as amended by article twenty-one of the amendments, provides: "No person shall be denied

proscription against discrimination along the vector of physical disability triggers strict scrutiny in the present appeal.[13] It is apparent that the decision to compensate an employee who loses a pinky toe but not an employee who suffers a grievous injury to his skin cannot survive the rigors of strict scrutiny. More specifically, it cannot be "justified . . . by a compelling state interest." *Keogh* v. *Bridgeport*, 187 Conn. 53, 66, 444 A.2d 225 (1982). Not even the fanciful imagination of Dr. Seuss could conjure up a rationale that could satisfy this stringent test on the facts of the present appeal. My colleagues in the majority do not dispute this conclusion.

the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Article twenty-one of the amendments amends article fifth of the amendments to our constitution to include "physical or mental disability."

The federal equal protection clause, contained in the fourteenth amendment to the United States constitution, provides in pertinent part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[13] "When a statutory classification . . . affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest." *Keogh* v. *Bridgeport*, 187 Conn. 53, 66, 444 A.2d 225 (1982); see *Franklin* v. *Berger*, 211 Conn. 591, 595, 560 A.2d 444 (1989). "A right is fundamental for purposes of equal protection analysis if it is explicitly or implicitly guaranteed by the constitution." *Zapata* v. *Burns*, 207 Conn. 496, 505, 542 A.2d 700 (1988). "In regard to classifications or other activity which infringe on a fundamental right, the state equal protection clause requires strict scrutiny. . . . [The categories specifically protected in Connecticut's equal protection clause reflect] core values that are specifically incorporated into the text of the Connecticut equal protection clause and which are not explicitly found in its federal counterpart"; it is for this reason that they are subject to strict scrutiny. R. Berdon, "Connecticut's Equal Protection Clause: Requirement of Strict Scrutiny When Classifications are Based upon Sex, Physical Disability or Mental Disability," 64 Conn. B.J. 386, 390 (1990). In the wake of his accident, the plaintiff is physically disabled. Under our state constitution, he thus has a fundamental right to be treated like any other injured worker. If a worker who has lost a toe is entitled to recover compensation for his injury, then our state equal protection clause compels the conclusion that the plaintiff—who has suffered grievous injuries to his skin—is likewise entitled to recover compensation for his injuries.

Accordingly, if the defendant were correct that the plaintiff's skin injuries are not compensable under § 31-308, then the statute would violate the unique equal protection clause of our state constitution. It is fundamental, however, that this court reads statutes "so as to avoid, rather than to create, constitutional questions." *In re Valerie D.*, 223 Conn. 492, 534, 613 A.2d 748 (1992). More specifically, "[i]n choosing between two statutory constructions, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 286, 618 A.2d 1 (1992). "[I]f literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity." (Internal quotation marks omitted.) *Worsham* v. *Greifenberger*, 242 Conn. 432, 443, 698 A.2d 867 (1997). As I discussed in part I of this concurring and dissenting opinion, the legislature intended "to fully protect workers and injuries on the job." 36 S. Proc., supra, p. 3880, remarks of Senator Meotti. Because the defendant's argument is constitutionally "precarious," we must prefer a reasonable construction of § 31-308 that facilitates, rather than frustrates, the intention of the legislature. In short, well settled principles of statutory construction compel us to adopt the understanding of § 31-308 that I set forth in part I of this concurrence and dissent.

### III

I wish to reiterate with unambiguous clarity that every member of this panel agrees on the following proposition: the plaintiff's grievous skin injuries are compensable, even though skin qua skin is not specifically enumerated in the statutory schedule.[14]

---

[14] In the words of my colleagues in the majority, Senator Meotti's statement "supports the notion that [the plaintiff] could receive compensation for

That said, we are not without our differences. The majority assumes that the commissioner compensated the plaintiff for "a portion" of the injuries that he suffered to the skin covering his hands. The majority cannot point to any evidence in the record that might justify our indulgence of this assumption. In fact, the majority acknowledges that "the commissioner denied compensation on the grounds that [he] lacked jurisdiction to award compensation for [an injury to the skin] . . . ." I cannot comprehend the process by which the majority extracts from this denial the proposition that the commissioner compensated the plaintiff for "a portion" of the injury to his skin.

Moreover, the majority's assumption cannot survive the fact that the commissioner's award does not reflect the lion's share of the injuries that the plaintiff suffered. More specifically, the majority cannot explain why the commissioner would have compensated the plaintiff for the injury to the skin covering both of his hands but not for the injury to the skin covering his arms, his back, his stomach, his rib cage, his nose, or his jaw (all of which are expressly enumerated in the statutory schedule).

For these reasons, I disagree with the majority's decision to affirm the commissioner's award. Although I join the majority's determination that the plaintiff is entitled to compensation for his grievous skin injuries— notwithstanding the fact that skin qua skin does not appear in the statutory schedule—I do not agree that he has already received such compensation. In my view, therefore, we must remand this case to the commissioner so that he may recalibrate his award in the wake

injury to an unscheduled body part or organ [i.e., his skin] . . . to the extent that the injury related to the loss of or loss of use of a scheduled body part or member," i.e., the portions of the plaintiff's body covered by the injured skin.

of our holding that unscheduled injuries must be subsumed within the compensation structure for scheduled body parts.

Accordingly, I concur in part and dissent in part.